*statute should have been submitted."* (Italics ours.)

In this case the issue submitted to the jury failed to follow the statute in several particulars, to wit:

(a) It did not elicit an affirmative finding that the truck was "not provided with adequate brakes."

(b) It did not elicit a finding as to whether or not the brakes were *"kept* in good working order," but elicited an affirmative finding that they were not in "good working order and condition *immediately* prior to the collision."

(c) The statute requires brakes in "good working order," while the issue inquired if they were in "good working order and *condition"* immediately prior to the collision.

Nowhere in the record is it shown that the plaintiff specially pleaded that the acts of defendant were in violation of the statute, and that therefore it was negligent as a matter of law. In the petition for writ of mandamus it is stated that "plaintiff based his right to recover upon the alleged negligence of defendants in six respects, (4) Operating the automobile without brakes in good order and condition." Special Issue No. 9 was substantially in the language of the petition as thus stated.

We do not find it necessary to determine whether or not the finding of the jury amounts to a finding of negligence per se because of violation of the statute; nor do we find it necessary to determine whether or not the finding is sufficient to support a judgment based on the theory of negligence per se. We have called attention to the rule stated in Gulf, C. & S. F. Ry. Co. v. Locker, supra, as well as the variance between the issue submitted and the language of the statute for the purpose of showing that it was obviously the intention of the court to submit the question of common-law negligence, rather than of negligence per se because of violation of the Penal Code. It was the duty of the court to so submit it, because it had been so alleged. We are strongly re-enforced in this conclusion by the fact that the plaintiff did not object to the manner in which the issues were submitted, and did not request an issue in the language of the statute. The jury was expressly told not to answer special issue No. 11, which was intended to establish the element of proximate cause,

unless they had answered special issue No. 10 in the affirmative. It must be held, therefore, that if the court intended to submit the theory of negligence per se, thus making special issue No. 10 of no effect, he created a condition which made it impossible for the jury to reach a complete verdict without disregarding the instructions of the court. The failure of the plaintiff to object to the submission of special issue No. 10, and to special issue No. 11, conditioned as it was, must be construed as an acquiescence in the action of the court. No such purpose should be imputed to the court or to counsel for plaintiff.

The case having been submitted to the jury on the theory of common-law negligence, and the jury by its finding to special issue No. 10 having exonerated defendant of negligence, it was the duty of the court to enter judgment in accordance with the findings of the jury.

Writ of mandamus will issue in accordance with the prayer of relator's petition.

Opinion adopted by the Supreme Court.

## NORTH TEXAS BUILDING & LOAN ASS'N v. OVERTON.

### No. 1899—6423.

Commission of Appeals of Texas, Section A. Oct. 23, 1935.

HICKMAN, Commissioner.

The certificate to the Honorable Court of Civil Appeals is in part as follows:

"The appellee Overton owned Lot 20 in Block 46, Overton Addition to the Town of Lubbock. On June 26, 1928, he conveyed it to A. W. May by warranty deed which retained the vendor's lien to secure six notes of $100.00 each. Two of the six have been paid and the last four are the basis of this suit by Overton.

"December 31, 1928, May and wife conveyed the property to J. W. Baze. On January 31, 1929, Baze and wife executed a mechanic's lien contract with G. H. Hughett which provides for the erection upon said lot by Hughett of a six-room residence and other improvements. On March 28, 1929, Overton executed an agreement that in consideration of benefits to be derived by him from the erection of improvements on the property, he subordinated his lien securing his six notes to the mechanic's lien which had been executed by Baze and wife. Thereafter Baze and wife conveyed the property to W. E. White by warranty deed dated May 24, 1929, which shows that the grantee executed two notes payable to Baze and assumed Overton's vendor's lien notes and the $5,000.00 evidenced by the note payable to the appellant Company. The residence was built upon the lot while it was owned by Baze and on April 20, 1929, Baze and wife filed their written acceptance of the improvements and their acknowledgment that the building had been completed in accordance with the plans and specification. After White purchased the property and assumed the indebtedness against it, he defaulted in the payment of Overton's notes and in his payments to the appellant Company. After some negotiations between the parties during which the appellant, on February 5, 1932, wrote White proposing 'To accept a deed from yourself and wife in cancellation of the indebtedness due us,' White and wife conveyed the property to the Association on February 5, 1932, by warranty deed which recites the consideration as follows:

" '$10.00 and other valuable considerations to us paid and secured to be paid by North Texas Building & Loan Association, a corporation, as follows: Ten and no/100 dollars cash in hand paid, the receipt of which is hereby acknowledged and confessed and the cancellation of a certain

Bledsoe, Crenshaw & Dupree, of Lubbock, and Carrigan, King & Surles, of Wichita Falls, for appellant.

Bean & Klett, of Lubbock, and T. T. Garrard, of Tahoka, for appellee.

deed of trust note dated April 1.7, 1929, in the sum of Five Thousand and no/100 dollars as set forth and described in deed of trust recorded in Vol. 56, page 545, deed of trust records of Lubbock County, Texas, which deed of trust was executed by J. W. Baze and wife Anne L. Baze to A. C. Estes, Trustee.'

"After the execution of this conveyance Overton filed suit upon the four unpaid vendor's lien notes, making May, Baze, White and the North Texas Building & Loan Association parties to the suit.

"The Association answered and filed its cross action as the owner and holder of the mechanic's lien debt in the sum of $5,000.00, praying that its mechanic's lien be decreed to be first and superior and that it be foreclosed against the premises.

"Upon a trial to a jury, only this issue was submitted:

" 'Do you find by a preponderance of the evidence that the North Texas Building & Loan Association intended to cancel the $5,000.00 note and lien in exchange for the deed of conveyance from the defendant, W. E. White?'

"This was answered in the affirmative and the Court rendered judgment against the Association and in favor of Overton foreclosing his lien as the superior lien upon the premises. * * *

"The Association did not plead that the deed which it accepted from White and wife and in which the consideration expressed is that it is for the purpose of cancelling the $5,000.00 note and mortgage was executed through fraud, accident or mistake. * * *

"Because the members of the Court are not in accord upon the decisive issues involved, we certify to Your Honors the following questions:

"(1) Is the consideration recited in White's deed to the Association contractual?

"(2) May the testimony introduced upon the question of the Association's intention as to merger be considered in support of the verdict of the jury?

"(3) If the consideration set out in White's deed is not contractual, was evidence to show the intention of the Association in taking the deed admissible in the absence of a plea of fraud, accident or mistake?

"(4) Is the recitation in White's deed to the effect that it was accepted in cancellation of the debt conclusive upon the issue of the Association's intention?"

█ █ We construe the first three questions as having application to the cross-action of the association against Baze and White, by which it sought judgment against them for the principal, interest, and attorney's fees on the $5,000 note, together with a foreclosure of its mechanic's lien securing same. To these questions we answer that the consideration recited in the deed, except as to the payment of $10 cash, is contractual, and, under the pleadings, could not be contradicted or added to by parol evidence. These recitals evidence the terms of the contract between the parties, and it is not permissible to vary them under the guise of showing the true consideration. 17 Tex. Jur. § 388, pp. 854–857. The effect of the acceptance by the association of the deed was to release Baze and White from all liability of the note, and it was not entitled to judgment against them thereon.

The question of whether there was such a merger of title in the association that its lien was extinguished as between it and appellee, a junior lienholder, is an altogether different question. Counsel for appellant regard it as being certified in the fourth question, and their briefs are devoted entirely to that issue. Treating that question as calling for an expression by this court of its views on the issue of merger, as between the association and Overton, the junior lienholder, we express our views as follows:

█ When a mortgagor conveys the mortgaged premises to the mortgagee in consideration of the cancellation or payment of the note for which the mortgage was given as security, the question of whether a merger of the two estates will result is determined by this test: Would it be more just to declare a merger or to keep the two estates separate? Whenever, by reason of the existence of a junior incumbrance, it is to the interest of the mortgagee to keep the estates separate, they will not be regarded as merged. It has been many times stated that the intention of the mortgagee is the determining factor. In this state that rule, in its literal meaning, is inaccurate, for it is presumed, as a matter of law, that he intended to keep the estates separate, if that course is essential to maintain his priority over a junior incumbrancer. Silliman v. Gammage, 55 Tex. 365; Browne v. King,

111 Tex. 330, 235 S. W. 522; R. B. Spencer & Co. v. May (Tex. Civ. App.) 78 S. W.(2d) 665 (writ ref.). It is immaterial, as between the senior and junior lienholders, whether the mortgagee retains the note and mortgage in his possession or surrenders them to the mortgagor. It is likewise immaterial whether or not the deed of conveyance from the mortgagor to the mortgagee recites, as did the one in the instant case, that the cancellation of the note and mortgage was a part of the consideration for the conveyance.

It is often true, as no doubt it was in the instant case, that it is decidedly to the advantage of the mortgagor and mortgagee to avoid the necessity of a foreclosure suit by a conveyance of the premises to the mortgagee. A rule penalizing them for so doing would be contrary to our policy that litigation is not to be encouraged. The junior lienholder suffers no injury thereby, but is in the same position as if there had been a foreclosure without his having been made a party. His equity of redemption is not affected, neither is his lien thereby elevated to a first lien.

Our answer to the fourth question is that the recitation in the White deed is not conclusive on the issue of the Association's intention to merge the two estates.

Opinion adopted by the Supreme Court.