Fred ADAIR, Appellant,

v.

The STATE of Texas, Appellee.

*John VIA, Appellant,*

v.

The STATE of Texas, Appellee.

Nos. 43666, 43667.

Court of Criminal Appeals of Texas.

July 19, 1972.

David J. Nagle, of Nagle & Barr, Houston, for appellants.

Bob Smith, Dist. Atty., Phillip A. Nelson, Jr., and Lawrence Wells, Asst. Dist. Attys., Austin, and Jim D. Vollers, State's Atty., Austin, for the State.

## OPINION

ONION, Presiding Judge.

### OPINION ON APPELLANTS' MOTION FOR REHEARING

Our opinion on original submission is hereby withdrawn and the following is substituted in lieu thereof.

These appeals arise out of convictions for possession of marihuana with the punishment being assessed at 10 years in each case. The imposition of the sentences was suspended and each appellant was placed on probation.

Appellants Adair and Via were jointly indicted with co-defendants Lawrence Cearley, Mary Kinslow, Terance O'Neil, Linda Roberts and Edwin Mark Stanton who were charged with "acting together" in possession of a narcotic drug, to wit: marihuana.

After severance appellants were jointly tried before the court upon their pleas of not guilty after waivers of a jury trial were executed.

This case presents the question of what showing must be made to the magistrate issuing search warrants in order that there may be a substantial basis for crediting the report of a first time informer, known to the police but unidentified to the magistrate, who purports to describe personal knowledge of criminal activity but who has not previously given accurate information to the police.

The instant case also challenges the sufficiency of the evidence to show possession of the narcotics in either appellant.

### I. *Search and Seizure*

At the outset appellants particularly contend the trial court erred in overruling a motion to suppress on the ground that the affidavit underlying the search warrant was insufficient to reflect probable cause, arguing that the second prong of the two prong Aguilar test is not satisfied by the affidavit. Aguilar v. Texas, 378 U.S. 108, 84 S.Ct. 1509, 12 L.Ed.2d 723 (1964).

The record reflects that at approximately 2:20 a. m. on October 8, 1969, Austin police officer Jerry L. Spain sought a search warrant to search the premises of "Linda Roberts, WF–18, and other person or persons unknown to affiant by name, identity, or description" at "700 West 10th, Austin, Travis County, Texas."

The relevant portion of the affidavit presented to the magistrate and upon which the search warrant issued is as follows:

"Affiant has received information *from a credible and reliable informatn* [sic] that the above named subject Linda Roberts is keeping and using marijuana in her apartment located at 700 West 10th, Austin, Travis County, Texas. Informant has observed marijuana in the apartment within the past 24 hours and

further states the marijuana is being kept in a match box, the type that kitchen matches come in and is in the front room of the apartment. *Although the informant has not given information in the past, their [sic] reliability, and credibility has been established by the fact of their [sic] lack of a criminal record, the reputation in the neighborhood, and are [sic] well thought of by their [sic] fellow associates."* (Emphasis supplied)

■ A search warrant may rest upon any one of three types of information. First, it may rest entirely upon an informer's tip which is hearsay provided, of course, there is a sufficient basis to credit the hearsay. Secondly, it may be based entirely upon facts within the personal knowledge of the affiant. Thirdly, it may be based upon a combination of the first two—that is a combination of hearsay and the personal knowledge of the affiant. It should be observed, however, that the search warrant affidavit must contain allegations that go beyond the affiant's mere suspicion or his repetition of another person's mere suspicion. See Gonzales v. Beto, 425 F.2d 963, 968 (5th Cir. 1970); Ruiz v. State, 457 S.W.2d 894, 896 (Tex. Cr.App.1970) (concurring opinion).

It is clear from an examination of the affidavit in the instant case that it fits within the first category discussed above —the probable cause being based entirely upon the informer's tip. See Kemp v. State, 464 S.W.2d 141, 147 (Tex.Cr.App. 1970) (dissenting opinion adopted in part as opinion of the court on the motion for rehearing).

■ In determining the sufficiency of such affidavit to reflect probable cause for the issuance of the search warrant, we are bound by the four corners thereof. Article I, Sec. 9, Tex.Const. Vernon's Ann.St., Article 18.01, Vernon's Ann.C.C.P.; McLennan v. State, 109 Tex.Cr.R. 83, 3 S.W. 2d 447, 448 (1928); Hall v. State, 394 S. W.2d 659 (Tex.Cr.App.1965); Gaston v. State, 440 S.W.2d 297 (Tex.Cr.App.) (con-

curring opinion); Ruiz v. State, supra, 457 S.W.2d at 896 (concurring opinion).

Since the affidavit in question considered from its four corners reflects that it is based solely upon hearsay unaided by independent police investigation or other corroboration, we must determine whether it meets the two-pronged Aguilar test (378 U.S. 108, 84 S.Ct. 1509, 12 L.Ed.2d 723).

In Aguilar the Supreme Court wrote:

"Although an affidavit may be based on hearsay information and need not reflect the direct personal observations of the affiant, Jones v. United States, 362 U.S. 257, 80 S.Ct. 725, 4 L.Ed.2d 697, the magistrate must be informed of some of the underlying circumstances from which the informant concluded that the narcotics were where he claimed they were, *and* some of the underlying circumstances from which the officer concluded that the informant, whose identity need not be disclosed, see Rugendorf v. United States, 376 U.S. 528, 84 S.Ct. 825, 11 L.Ed.2d 887, was 'credible' or his information 'reliable.'" (Emphasis supplied) 378 U.S. at 114–115, 84 S.Ct. at 1514.

A study of the affidavit in question reveals that it is sufficient to satisfy the first prong of the Aguilar test. The informer declared he had personally observed the narcotic in the apartment and revealed where it was kept and the type of container. These "underlying circumstances" are full enough to meet the first part of the Aguilar test. We concern ourselves then with the honesty of the informer and whether the second prong of the Aguilar test has been satisfied, particularly since the unidentified informer is shown to be of unknown or untested reliability.

In most cases dealing with a search warrant affidavit based solely upon hearsay without independent corroboration, surveillance, etc., with which this court has had to deal, the unidentified informer has been described as one of proven reliability by having previously given true and correct

information leading to the discovery of narcotics, arrests and convictions, etc. These allegations or type of description of the usual police informer undoubtedly stemmed from Jones v. United States, 362 U.S. 257, 80 S.Ct. 725, 4 L.Ed.2d 697, 78 A.L.R.2d 233 (1960).

■ The absence of an allegation of prior reliability is not, ipso facto, a fatal defect in the affidavit. As Chief Justice Burger only recently said, speaking for himself and three other justices, ". . . this Court in Jones never suggested that an averment of previous reliability was necessary." United States v. Harris, 403 U.S. 573, 91 S.Ct. 2075, 2081, 29 L.Ed.2d 723 (1971). Actually, as he noted, the inquiry in determining probable cause should be whether the informer's *present* information is truthful and reliable.

The police are often confronted with the first time informer or citizen informer sometimes referred to as a "walk in" who is unknown to the police and with whom the police have had no previous experience. When they give information as to criminal activity their information should not become unusable because there has not been a previous instance of reliability. When citizens are involved it cannot be expected that they would have had past transactions or dealings with the police. See People v. MacDonald, 480 P.2d 555 (Colo.1971). And while in many such cases less reason may exist for failing to disclose the informer's identity to the magistrate than where the ordinary police informer is involved, nevertheless, many citizens prefer to cooperate in anonymity with the police

or fear possible retribution by the accused.[1] Certainly where sufficient "underlying circumstances" are presented to the magistrate so he can make an independent determination as to the credibility of the informer, the use of such informers is not to be excluded.

The problem confronting law enforcement officers is how to supply to the magistrate sufficient "underlying circumstances" so there will be a "substantial basis" for accepting the reliability of the first time informer. Jones v. United States, supra.

■ In the instant case the officer-affiant clearly realized that since days of the Aguilar decision his conclusory statement that the informer was "credible and reliable" was not sufficient standing alone. He thus sought to give "underlying circumstances" in support of such conclusion. He put the magistrate on notice that the informer had not previously given information and was thus a first time informer. He offered to the magistrate the fact that the informer's "reliability and credibility" was established by

(1) lack of a criminal record

(2) the reputation in the neighborhood

(3) well thought of by fellow associates.

Is the lack of a criminal record entitled to be given any weight by the magistrate in the determination of the credibility of the first time informer? At first blush it would certainly seem so. We permit the impeachment of witnesses by the use of certain final convictions. See Article

---

1. It appears that some courts do not feel that the same tests applied to the ordinary police informer should in determining probable cause be applied to citizen-informer who acts openly to see that laws are enforced, at least where the citizen informer's name and address are set forth in the search warrant affidavit and he is an eye witness to the criminal activity. This along with other underlying circumstances is often sufficient. People v. Glaubman, 485 P.2d 711 (Colo.1971). In

Dishman v. State, 460 S.W.2d 855 (Tenn. Cr.App.1970), the informer was an eye witness to the criminal activity and was described as a responsible and reliable citizen and his name was disclosed to the magistrate and the fact of disclosure noted in affidavit. Mr. Justice Harlan suggested in his dissent in United States v. Harris, supra, that perhaps the citizen informer could "be brought before the magistrate where he could assess their credibility for himself." 91 S.Ct. at 2090.

38.29, V.A.C.C.P.; Bustillos v. State, 464 S.W.2d 118 (Tex.Cr.App.1971). And we held that the absence of a criminal record was entitled to some weight in determining probable cause in Yantis v. State, Doughty v. State, 476 S.W.2d 24 (Tex.Cr.App. 1972).

We also know, though, that some courts have given weight to the fact that the unidentified informer with no prior history of reliability makes a declaration against his penal interest in revealing information as to criminal activity. Chief Justice Burger and three other justices relied upon such a declaration in United States v. Harris, supra, although Mr. Justice Harlan took issue with such reliance in his dissent. See also United States v. Viggiano, 433 F.2d 716 (2nd Cir. 1970); United States ex rel. DiRienzo v. Yeager, 443 F.2d 228 (3rd Cir. 1971); Commonwealth v. Stewart, 267 N. E.2d 213 (Mass.1971); United States v. Woodring, 444 F.2d 749 (9th Cir. 1971).

And we are also aware that the existence of a criminal record does not render an informer unreliable, particularly where his previous tips have proven trustworthy.

In discussing the task of the magistrate "of assessing the probable credibility of unidentified informants who purport to describe criminal activity of which they have personal knowledge, and where it does not appear that such informants have previously supplied accurate information to law enforcement officers," the late Mr. Justice Harlan in his dissent in United States v. Harris, 403 U.S. at 600, 91 S.Ct. at 2090, said:

> "Without violating the confidences of his source, the agent surely could describe for the magistrate such things as the informer's general background, employment, personal attributes that enable him to observe and relate accurately, position in the community, *reputation with others,* personal connection with the suspect, any circumstances which suggest the probable absence of any motivation to falsify, the apparent motivation for

supplying the information, *the presence or absence of a criminal record* or association with known criminals, and the like." (Emphasis supplied)

In writing the opinion for the court in Harris, Chief Justice Burger however stated:

> "Indeed, when the inquiry is, as it always must be in determining probable cause, whether the informant's *present* information is truthful or reliable, it is curious, at the very least, that Mr. Justice Harlan would place such stress on vague attributes of 'general background, employment . . . position in the community. . . .'" 91 S.Ct. at 2081.

It would thus appear to be no unanimity on the subject. The difficulty with the mere statement that the informer has no criminal record is that it does not inform the magistrate of the extent of the affiant's investigation. The statement does not reflect whether the affiant relied only upon a check of local police files, or if he went further and sought information from the State Department of Public Safety, the FBI or other sources. The age of the informer was not given the magistrate. If the informer was a male barely 17 years of age or a female barely 18 years of age there may well exist a reason why such an informer would not have a criminal record. See Article 2338–1, Vernon's Ann.Civ.St. Further, the term "criminal record" may have one meaning for one officer-affiant and an entirely different interpretation may be given by another such affiant. One may include arrests and the other may rely only upon final convictions or a statutory definition. Cf. Article 37.07, V.A.C. C.P.

Of course, we should not be hypertechnical and should remember that a policeman's affidavit "should not be judged as an entry in an essay contest." Spinelli v. United States, 393 U.S. 410, 438, 89 S.Ct. 584, 600, 21 L.Ed.2d 637 (1969) (Fortas, J., dissenting). Nevertheless, officer-affiants

should be encouraged to furnish to the magistrate as specific "underlying circumstances" as possible.

We conclude as we did in Yantis and Doughty, supra, that the informer's lack of criminal record was entitled to be given some weight by the magistrate in the assessment of probable cause.

Next, the affiant asserts the unidentified informer's "credibility and reliability" was established by "the reputation in the neighborhood." The phrase is somewhat vague. Only by reading the same in conjunction with the earlier assertion as to credibility and reliability is it entitled to any weight. This is perhaps the commonsense and realistic approach as recommended in United States v. Vantresca, 380 U.S. 102, 85 S.Ct. 741, 13 L.Ed.2d 684 (1965). Otherwise, "the reputation" could have numerous meanings. And "the neighborhood" is not identified. It could be the area in which the informer resides as in Yantis and Doughty or the area where the criminal activity was observed. Greater specificity again would be more desirable.

Lastly, the affiant asserts the informer is well thought of by his "fellow associates." Without any information about the informer's general background, occupation, general position in the community, information about those with whom he associates, etc., it is difficult to assign any real meaning to "fellow associates" or the statement in which words are included. It appears little more than a repetition of the statement which preceded it in the affidavit.

We realize the reluctancy of officer-affiants from being more specific than absolutely necessary for fear of giving away the identity of the informer which for one reason or another they may feel the need to protect. Unless there is a real necessity for doing so they may well compound the problems of the probable cause assessing magistrate, the trial court and this court.

It is true that in appraising an affidavit as to whether its allegations constitute sufficient "underlying circumstances" to insure the reliability of the informer some courts have taken into consideration the fact that the information furnished from personal knowledge was given in such detail that it would indicate that the only way he could have obtained it was through a reliable method. See People v. MacDonald, 480 P.2d 555 (Colo.1971); United States v. Viggiano, 433 F.2d 716 (2nd Cir. 1970); Ludwig v. Wainwright, 434 F.2d 1104 (5th Cir. 1970); People v. Clark, 488 P.2d 565 (Colo.1971).

Few of these courts have set forth any guidelines for police officers or magistrates as to just how detailed the facts must be to authorize this consideration. This writer's views as to establishing the reliability of previously unknown informer by reference to the particularity of the informer's story were set forth in the concurring opinion in Gaston v. State, 440 S. W.2d 297. These views parallel in some measure the views stated by Mr. Justice Harlan in his dissent in Harris:

"It is not possible to argue that since certain information, if true, would be trustworthy, therefore, it must be true. The possibility remains that the information might have been fabricated. This is why our cases require that there be a reasonable basis for crediting the accuracy of the observation related in the tip. In short, the requirement that the magistrate independently assess the probable credibility of the informant does not vanish where the source of the tip indicates that, if true, it is trustworthy." 91 S.Ct. at 2086.

Mr. Justice Harlan did concede there might be two ways in which asserted personal observations could play a role in a determination of whether the observations took place. One way he described in part as follows:

"Additionally, it might be of significance that the informant had given a more than ordinarily detailed description of the suspect's criminal activities. Al-

though this would be more probative of the reliability of the information, it might also permissibly lead a magistrate, in an otherwise close case, to credit the accuracy of the account as well. I do not believe, however, that in this instance the relatively meager allegations of this character are, standing alone, enough to satisfy the credibility requirement essential to the sufficiency of this probable cause affidavit. Reading this aspect of the affidavit in a not unduly circumspect manner, the allegations are of a character that would readily occur to a person prone to fabricate. To hold that this aspect of the affidavit, without more, would enable 'a man of reasonable caution,' Berger v. New York, 388 U.S. 41, 55, 87 S.Ct. 1873, 18 L.Ed.2d 1040 (1967), to conclude that there was adequate reason to believe the informant credible would open the door to the acceptance of little more than florid affidavits as justifying the issuance of search warrants." 91 S.Ct. at 2086–2087.

We need not in the instant case determine whether the asserted personal observations are "more than ordinarily detailed" so as to authorize their consideration in the assessment of the informer's reliability. We conclude, without such consideration, that the other "underlying circumstances" when considered together are sufficient to satisfy the second prong of the Aguilar test when the affidavit is given a common-sense and realistic reading. United States v. Ventresca, 380 U.S. 102, 85 S.Ct. 741, 13 L.Ed.2d 684 (1965).[2]

II. *Sufficiency of the Evidence*

At approximately 2:40 a.m., shortly after the issuance of the search warrant, Sgt. Spain and two other Austin police officers knocked at the door of the downstairs apartment described in the affidavit. Hearing a "person running," Sgt. Spain opened the unlocked door and walked into the dimly lit front or living room of the apartment. He testified that he could see smoke in the air and he smelled what, in his opinion, was the aroma of marihuana.

Five persons were in the living room when the officers entered. Co-defendant Mary Kinslow walked towards the officers from the other side of the room, took the warrant and commenced to read it. Co-defendant O'Neil[3] was in a sleeping bag next to the south wall with his eyes closed. Co-defendant Cearley was seated on the north end of a large couch located on the west side of the room. Appellant Via was seated on a stool located in front of approximately the middle of said couch, while appellant Adair was sitting in a chair against the north wall.

Sgt. Spain testified that he found what appeared to be a marihuana cigarette butt or "roach" in an ashtray situated on the north end of the couch where Cearley was sitting. Another "roach" was obtained when co-defendant O'Neil picked it up from the floor and handed it to Spain saying, "Don't forget this one." It is difficult to determine from the record where in the living room O'Neil picked up the "roach," but Officer Spain testified that it was situated on the floor between the north end of the couch and the chair in which appellant Adair had been seated.

When the police first entered the apartment Sgt. Robert Jones crossed the living room, entered a hallway and opened the closed door to the bathroom. There he discovered co-defendant Stanton in a pair of shorts, his trousers on the floor beside him and on top of the trousers a plastic baggie filled with a substance later shown

---

2. The affidavit nevertheless is not a model and should not be used as such in future cases, as is so often done in cases where this court has upheld the sufficiency of a certain affidavit. See Brown v. State, 437 S.W.2d 828 (Tex.Cr.App.1968). What we said in footnote #1 of Yantis and Doughty, supra, applies with equal force here.

3. The name of this co-defendant is spelled O'Neil in the indictment but O'Neal throughout the transcription of the court reporter's notes.

to be marihuana. Linda Roberts was also present, putting on a dress. She was wet or damp as if she had just taken a bath.

No other contraband was found. A search of the person and clothing of the appellants Via and Adair and all of the co-defendants failed to reveal any marihuana, or cigarette papers, etc.

However, Spain, who had been in the narcotics detail for approximately a year, testified that both appellants' eyes were in a more or less fixed position, their speech was "slurred" and "mumbly"; that they answered the officer's questions with matters not relevant to the questions, and that they moved rather slowly, taking "deliberate steps."[4] He also expressed the opinion without objection that he had "just walked into a pot party" based on what he saw and smelled.[5] He testified that he "checked quite closely" and did not smell intoxicating beverages on the breath of the appellants. On the other hand, he admitted the physical condition of the appellants could have resulted from the use of alcohol, heroin, other drugs or barbiturates. No tests were administered to determine alcohol or drug intoxication. There was testimony that vodka produced no breath odors. The officer also admitted that a somewhat similar appearance could have resulted from physical exhaustion and that he had no idea how long the appellants had been awake prior to the arrest. Moreover, within his police experience he had encountered many persons who became so nervous upon their arrest they could not coherently give their names.

Spain acknowledged that he did not know nor had ever heard of any of the people in the apartment except Linda Roberts. No surveillance of the premises had been conducted prior to the execution of the search warrant and the officers did not know how long the appellants, who neither rented nor leased the apartment, had been present before they arrived. It was shown by other evidence that the appellants were both transients, Via from Virginia and Adair from Ohio, who had been in Austin less than two days prior to their arrest.

Sgt. Robert Jones testified that, in his opinion based on five years of narcotics specialization in law enforcement, the aroma he had smelled on the night in question was marihuana.

Chemical analysis revealed that the cigarette butts contained .11 of a gram of marihuana and that the substance in the baggie was marihuana.

Appellants did not testify, but they called two expert witnesses whose employment was related to drug abuse programs of the State. The thrust of this expert testimony was the ingestion of ordinary amounts of marihuana does not usually produce symptoms which can be detected by gross observation. One of these experts, a doctoral psychologist specializing in the pharmacology of drugs, mentioned leading empirical research in controlled experiments which suggest that rather strong doses of the active agent in marihuana produce only slight physical changes, most of which were measurable only with medical instruments. However, this witness testified that a "sufficient dose" of marihuana could produce a "glaze, that loss of attention."

Appellants had earlier cross-examined Sgt. Spain on these questions. The officer said that he "more or less agree[d]" with

---

4. It was the officer's testimony that the occupants of the living room did not move about the room until the officers were ready to leave the premises.

5. At the examining trial Sgt. Spain testified and expressed the opinion that the appellants and others in the house were under the influence of marihuana. The transcription of such proceedings was introduced by the appellants at the hearing on their motion to suppress. At the trial on the merits, before the same judge, it does not appear that the witness Spain was asked the same question and he did not expressly testify the appellants were under the influence of marihuana, though that was the import of his testimony.

the conclusion that in controlled conditions an observer cannot determine by gross, external observation whether a person has been smoking marihuana; however, he did not necessarily accept that assertion where the subject was not in "controlled condition[s]."

■ Is the foregoing evidence sufficient to prove that the appellants were in possession of marihuana, either jointly or individually? It is settled that possession in a narcotics case need not be exclusive. Evans v. State, 456 S.W.2d 911 (Tex.Cr.App. 1970); Gomez v. State, 365 S.W.2d 165 (Tex.Cr.App.1963); King v. State, 169 Tex.Cr.R. 34, 335 S.W.2d 378 (1960); Perry v. State, 164 Tex.Cr.R. 122, 297 S.W.2d 187 (1957). Facts and circumstances may be sufficient to show the accused and others acted together in possessing a narcotic. Ochoa v. State, 444 S.W.2d 763 (Tex.Cr. App.1969) and cases there cited. 30A Tex. Digest, Poisons ⊜9. The term "possess" as used in Article 725b, Vernon's Ann.P.C., has been held to mean "actual control, care and management of the narcotic drug." Cuellar v. State, 169 Tex.Cr.R. 604, 336 S. W.2d 159, 161 (1960) (2nd headnote) and cases there cited; Massiate v. State, 365 S.W.2d 802 (Tex.Cr.App.1963). See also State v. Callahan, 77 Wash.2d 27, 459 P.2d 400 (1969) noted in 46 Wash.L.Rev. 541 (1971); Annot. "What Constitutes 'Possession' Of a Narcotic Drug Proscribed by Sec. 2 Of the Uniform Narcotic Drug Act," 91 A.L.R.2d 810 (1963).

First, then, we turn our attention to the marihuana found in the bathroom. Clearly this contraband was not in the exclusive possession of either of the appellants and further there is nothing to show that the appellants had ever been in such room or had knowledge that Stanton had possession of any marihuana in the room the door to which was closed when the officers entered the apartment. The evidence is insufficient to reflect an "acting together" with regard to such marihuana. Culmore v. State, 447 S.W.2d 915 (Tex.Cr.App.

1969). Thus, such contraband is eliminated from further consideration in disposing of the question before us.

There remains, of course, the two cigarette butts found in the room where the appellants were discovered in company with three other people. Neither appellant was shown to have been in exclusive possession of such "roaches" either before or at the time of the officers' arrival. The possession, if any, must then be joint or constructive, and a circumstantial evidence case is thus presented.

The general rule in such cases was stated in Brock v. State, 162 Tex.Cr.R. 339, 285 S.W.2d 745 (1956) as follows:

"A conviction on circumstantial evidence cannot be sustained if the circumstances proven do not exclude every other reasonable hypothesis except that of the guilt of the accused; and proof amounting only to a strong suspicion or mere probability is insufficient."

■ And it is well established that the mere presence of the accused at the scene of the crime does not, of itself, justify drawing an inference that he participated therein. Culmore v. State, supra, see footnote #1; Commonwealth v. Florida, 272 A.2d 476 (Pa.1971).

Only recently in Brown v. State, 481 P. 2d 475, 477 (1971), the Oklahoma Court of Criminal Appeals wrote:

"Possession means more than being where the action is; it involves the exercise of dominion and control over the thing allegedly possessed. United States v. Romano, 382 U.S. 136, 86 S.Ct. 279, 15 L.Ed.2d 210 (1965); Fitzpatrick v. United States, 410 F.2d 513 (5th Cir. 1969). Mere proximity is insufficient. By its very nature, possession is unique to the possessor and it is not enough to place him in the presence of other persons having possession to impart possession to him. Commonwealth v. Reece, 437 Pa. 422, 263 A.2d 463, 466 (1970).

"It is true that exclusive possession is not necessary where the parties jointly possess a drug and possession may be proven by circumstantial evidence. Patterson v. State, Okl.Cr., 403 P.2d 515 (1965). However, it cannot be inferred from merely being present in a place where marihuana is found that the defendant had knowledge of its presence and had dominion and control. There must be additional evidence of knowledge and control to sustain a conviction."

In State v. Carr, 8 Ariz.App. 300, 445 P.2d 857, 859 (1968), the Arizona Court wrote:

"The crime of possession of narcotics requires a physical or constructive possession with actual knowledge of the presence of the narcotic substance. Carroll v. State, 90 Ariz. 411, 368 P.2d 649 (1962). Although possession may be shown by direct or circumstantial evidence, the evidence must link the defendant to the narcotics in such a manner and to such an extent that a reasonable inference may arise that the defendant knew of the narcotics' existence and of its whereabouts. Carroll v. State, supra." See also State v. Oare, 249 Or. 597, 439 P.2d 885 (1968); Haynes v. State, 475 S.W.2d 739 (Tex.Cr.App. 1971).

In Sturgeon v. State, 483 P.2d 335 (Okl. Cr.1971), it was held that where a person is present on premises where an "unlawful drug" is found but does not have exclusive access, use, or possession of the premises, it may not be inferred that he had knowledge and had control of it unless there are additional independent factors showing his knowledge and control.

Thus it is clear that the mere presence of the appellants at the searched premises at which they were apparent visitors and their close proximity to the marihuana "roaches" is not enough alone to establish guilt. There were, however, the independent factors of the marihuana smoke and its aroma in the room, where the appellants and the "roaches" were found, as well as the condition of the appellants which the experienced officers testified resulted from being under the influence of marihuana.

The trial judge was the trier of the facts, the judge of the credibility of the witnesses and the weight to be given to their testimony. Considering the evidence in the light most favorable to the judgments entered, as we are required to do, we conclude the evidence is sufficient to sustain the convictions.

The judgments are affirmed. The motions for rehearing are overruled.

MORRISON, J., not participating.