**T. D. JEFFREY, Jr., et al., Appellants,**

**v.**

**Tay W. BOND, Appellee.**

**No. 12044.**

Court of Civil Appeals of Texas, Austin.

July 25, 1973.

Rehearing Denied Aug. 15, 1973.

Dale E. Muller, James R. Sloan, Austin, for appellants.

Joseph Latting, Gay & Latting, Austin, for appellee.

SHANNON, Justice.

Appellee, Tay Bond, filed suit in the district court of Travis County to establish a first and superior lien in 5.33 acres, and to enjoin appellants, T. D. Jeffrey, Jr., T. D. Jeffrey, Trustee, and C. T. Uselton from conducting a deed of trust sale of that acreage. Upon trial to the court, a judgment favorable to appellee was entered. We will affirm that judgment.

Appellee's suit resulted from a tangled sleave of financial transactions which we now unravel. In October of 1969, C. T. Uselton and Al Craus owned the 5.33 acre tract. At that time, Craus needed $27,200, and in order to obtain a loan from the Texas State Bank he persuaded appellee, Tay Bond, to sign as a co-maker of the note. This loan was increased to $29,200 in November of 1969.

In December of 1969, Uselton and Craus borrowed $20,000 from the University State Bank and signed a note secured by a deed of trust on the 5.33 acre tract.

By February of 1970, the Texas State Bank began to press Craus and Bond for payment of the $29,200 note. In order to obtain funds to pay that note, Bond approached Harry Peterson who was director of the North Austin State Bank, and asked him to help persuade that bank to make a loan of $30,000 to Craus. The bank agreed to make the loan if Peterson and certain others signed the note. Peterson was agreeable to signing the note if Bond would also sign, and if Bond would also agree to pledge to Peterson a $27,600 real

estate commission, which Peterson owed Bond in a different transaction, in the event Craus defaulted and Peterson had to pay the note. Bond agreed to sign the note only if Craus would grant to Bond a lien on the 5.33 acre tract. Bond also required that Uselton join in the granting of the lien on the acreage and sign the Craus note at the North Austin State Bank. Uselton agreed and signed an agreement which provided as follows:

"February 12, 1970

"This contract entered into between Harry Peterson, Tay Bond, C. T. Uselton, Al Craus, and North Austin State Bank as guarantee on the $30,000.00 loan made by the North Austin State Bank this day to Al Craus, Wayne Rutland, C. T. Uselton, Brodie Keene, Tay Bond and Harry Peterson, the following conditions are made.

"As guarantee to Harry Peterson for his guarantee signature on the above note Tay Bond hereby pledges to Harry Peterson $27,000.00 commission to be earned on the sale of property known as Hillcrest Farms to purchasers Brodie Keene and Jim Dobson.

"In event that Tay Bond's commission is used (forfeited) to pay above note it is hereby agreed and understood that in consideration for Tay Bond's guarantee on the above loan Tay Bond is hereby at such forfeiture time granted with Harry Peterson a valid second lein [sic] in the amount of $30,000.00 and at such time will be transferred from the North Austin State Bank to Harry Peterson and Tay Bond, on the 5.33 acres owned by C. T. Uselton, Trustee and Al Craus located on the corner of Kramer Lane and Old Dallas Highway (North Lamar Street) Austin, Texas and it is understood and agreed that such valid second lein [sic] shall be in the same percentage ownership between Harry Peterson and Tay Bond as the $27,000.00 commission relates to the $30,000.00 above loan.

"The legal description of above approximately 5.33 acres is attached and made a part of this instrument."

By March, 1970, the University State Bank began seeking payment of the $20,000 note of Uselton and Craus, and in that month Uselton paid one-half of that amount. Craus was unable to pay the other one-half.

Craus was also unable to pay the $30,000 loan from the North Austin State Bank, and on March 29, 1970, Peterson paid that note. Pursuant to the terms of the February 12, 1970, agreement, Peterson refused to pay Bond the $27,600 real estate commission.

Also upon the basis of the agreement of February 12, Bond claimed a lien of $30,000 against the 5.33 acre tract jointly owned by Uselton and Craus.

In July, 1970, Uselton through Jeffrey, trustee, paid off the balance of the note to the University State Bank, and the bank assigned to the trustee the note "together with any and all liens securing the payment thereof."

The trustee gave notice that he intended on February 2, 1971, to sell the acreage. Uselton's theory was that by taking an assignment of the first lien held by the University State Bank and by foreclosing that lien and buying the property, he could eliminate the lien which he had given Bond.

Bond filed suit to enjoin Uselton and the trustees from conducting a sale of the acreage, and to establish a first and superior lien in the acreage. Appellee's suit was grounded on the premise that upon payment of the note by Uselton to the University State Bank, the lien was extinguished and there was, accordingly, no lien to foreclose.

In the judgment the court enjoined appellants from conducting the sale of the acreage. The judgment provided further

that Bond recover from Craus the sum of $32,181 and that Bond have a first and superior lien to that acreage, which lien secured the payment of $30,000 owing Bond by virtue of the February 12, 1970, agreement. In addition, that lien was ordered foreclosed and the property sold in satisfaction of the judgment.

By several points of error appellants make four basic contentions: (1) that the agreement of February 12, created no valid lien as Uselton was not indebted to Bond; (2) Uselton was an accommodation maker on the note to the North Austin State Bank, and Bond was an accommodated maker, and as such, Bond had no right of recovery against him; (3) that the legal title of the trustee did not merge with the equitable title of Uselton; and (4) that the description of the land in the agreement of February 12, was "legally insufficient" to establish any lien in favor of appellee.

With respect to the first contention, Uselton testified that he signed the agreement of February 12, and that he knew that its terms gave Bond a lien on the acreage in the event Bond lost his commission. Nevertheless, Uselton claims that the lien is ineffective since he did not owe Bond any money.

■ It was not necessary for Uselton to be indebted to Bond in order for the lien to be valid. Any person capable of contracting may create a lien on his property to secure the debt of another without subjecting himself to any further obligation than the lien contract he gives. Hodges v. Roberts, 74 Tex. 517, 12 S.W. 222 (1889).

■ By their second contention, appellants say that Uselton was an accommodation maker and Bond was an accommodated maker on the North Austin State Bank note. Appellants then conclude that, as a matter of law, "by virtue of Section 3–415(3) of the U.C.C." Uselton was not liable to Bond for any portion of the amount of that note. We would suppose that appellants' reference is to Tex.Bus. and

Comm.Code Ann. § 3.415(c), V.T.C.A. That section provides that an accommodation party is not liable to the party accommodated.

The nub of appellants' contention is that Bond could not also be an *accommodation maker* for the reason that he benefited from the making of the note at the North Austin State Bank since that note enabled Craus and Bond to retire their note at the Texas State Bank, which freed some certificates of deposit which Bond had put up as security. Appellants say that to be an accommodation maker one may not receive value for signing the note.

Tex.Bus. and Comm.Code Ann. § 3.415(a) provides that an accommodation party is one who signs the instrument in any capacity for the purpose of lending his name to another party to it. In the second comment following § 3.415 it is stated that § 3.415(a) " . . . eliminates the language of the old Section 29 requiring that the accommodation party sign the instrument 'without receiving value therefor.' The essential characteristic is that the accommodation party is a surety, and not that he has signed gratuitously. He may be a paid surety, or receive other compensation from the party accommodated. He may even receive it from the payee, as where A and B buy goods and it is understood that A is to pay for all of them and that B is to sign a note only as a surety for A."

Insofar as Bond's status as an accommodation maker was concerned, we believe that under § 3.415(a) it is of no matter that he received a benefit from the note. See Shamaley v. Rubin, 454 S.W.2d 776 (Tex.Civ.App.1970, writ ref'd n. r. e.).

■ Turning now to appellants' arguments concerning merger, Uselton claims that by paying the note and having the bank assign the note and first lien to the trustee, he could cut off the lien he had given Bond in the February 21 agreement by foreclosing the first lien and buying in the property.

In those instances wherein the maker of a promissory note, secured by a real estate lien, subsequently acquires the note while remaining the owner of the real estate, a merger of the equitable and legal titles generally occurs. The doctrine of merger is grounded upon the premise that the obligor cannot at the same time be both obligor and obligee. It is said that equity will prevent or permit a merger as will best subserve the ends of justice. See In Re McDermott, 115 F.2d 582 (U.S.Ct.App. 7th Cir. 1940), Miller v. Whelan, 158 Ill. 544, 42 N.E. 59, 62 (1895).

An examination of the cases convinces us that the courts in this state, likewise, apply, or do not apply, the doctrine of merger, depending upon the particular fact situation, to achieve the ends of justice. See Sillman v. Gammage, 55 Tex. 365 (1881); North Texas Building & Loan Ass'n v. Overton, 126 Tex. 104, 86 S.W.2d 738 (1935). Clearman v. Graham, 4 S.W. 2d 581 (Tex.Civ.App.1928), 14 S.W.2d 819 (Tex.Comm'n App.1929), C. M. Hapgood Shoe Co. v. First Nat. Bank, 23 Tex.Civ. App. 506, 56 S.W. 995 (writ ref'd, 1900), Fidelity & Deposit Co. of Maryland v. Albrecht, 171 S.W. 819 (Tex.Civ.App. writ ref'd, 1914).

Applying these principles to the facts in this appeal we are of the opinion that, as between Uselton and Bond, the legal and equitable titles merged in Uselton when he paid the note.

■ In their final contention appellants complain of the adequacy of the description of the acreage contained in the agreement of February 12, 1970. The first page of that agreement refers to the 5.33 acres owned by Uselton and Craus. The last paragraph of that agreement states, "The legal description of the above approximately 5.33 acres is attached and made a part of this instrument." Attached to the agreement is a set of field notes to .918 acres of land out of the John Applegate Survey No. 58, a part of that certain 6.249 acre tract conveyed to C. T. Uselton, Trustee. Also attached to the agreement is a reproduction of a survey of the Kramer Lane Subdivision showing the original acreage as 6.249 acres of land out of the John Applegate Survey No. 58, and also showing the .918 acre tract carved out of the original 6.249 acre tract.

A tract of 6.249 acres, less the .918 acre tract shown on the plat, which shows the entire survey as well as being described on the second page of the instrument, yields a remainder of 5.33 acres. We are of the opinion that the description of the tract is sufficiently clear, and that the land may be located on the ground from the terms of the instrument and attached exhibits.

The judgment is affirmed.

Affirmed.