James R. WRIGHT, Appellant,

v.

The STATE of Texas, Appellee.

Nos. 46586, 46587.

Court of Criminal Appeals of Texas.

Oct. 10, 1973.

Robert Maloney, Dallas, for appellant.

Henry Wade, Dist. Atty., Jerome L. Croston, Asst. Dist. Atty., Dallas, Jim D. Vollers, State's Atty., Austin, for the State.

## OPINION

ONION, Presiding Judge.

These appeals arise out of convictions for possession of a narcotic drug, to wit: marihuana, and for possession of a dangerous drug, to wit: methamphetamine. The cases were consolidated for the purpose of trial without objection, and the appellant was convicted following his pleas of not guilty and his punishment set at confinement for two (2) years in each case. The trial was a joint trial with the co-defendant, Jimmy Dean Warren.

Appellant's first ground of error challenges the sufficiency of the evidence to show that the appellant was in possession of the contraband.

Officer B. F. Fowler of the Dallas Police Department stated that he received information from a reliable and credible informant to the effect that James R. Wright was in possession of marihuana at apartment number 125 located at the Park Vali Hai Apartment Complex in Dallas. Upon determining from the apartment manager, Mrs. Bloom, that appellant had leased apartment number 125 on the previous day, Fowler obtained a search warrant based on this information at approximately 6 p. m. on April 14, 1970.

At approximately 6:45 p. m. on the same day, Officer Fowler, along with Dallas Police Officers J. R. Landers, June McLine, and Jean Holland, arrived at the complex, obtained keys from Mrs. Bloom, and placed appellant's apartment under surveillance.

Approximately thirty minutes later, the officers executed the search warrant after two persons entered the apartment with a key. Upon entering the apartment, Jimmy Dean Warren and Elaine Gunter were observed sitting on a couch in the living room. Appellant was not present at the time.

A search was conducted and a pipe containing what appeared to be marihuana was found in a kitchen cabinet underneath the sink. A plastic packet including a hypodermic syringe in addition to two vials containing seeds and what appeared to be marihuana was found in a shirt pocket hanging in a walk-in closet off the hallway of appellant's single bedroom apartment. Also discovered in another shirt pocket hanging in the same closet was a white powder substance believed to be contraband along with a disposable syringe in a coat pocket and two "roach clips" with some "pills" concealed in a cardboard box in the same closet.

The officers also discovered appellant's lease agreement and other "papers" addressed to him on and inside the bedroom dresser. Located in the same room were two open suitcases containing, among other things, clothes and letters addressed to co-defendant Warren.

When the search was concluded, Warren was allowed to gather up his possessions, same being the two suitcases and three shirts hanging in the hall closet.

The case was submitted to the jury under a charge of circumstantial evidence.

In proving possession in narcotics cases, various facts and circumstances surrounding a search may be shown to prove that the accused and other persons acted together in jointly possessing a narcotic. Collini v. State, 487 S.W.2d 132 (Tex.Cr. App.1972); Harvey v. State, 487 S.W.2d 75 (Tex.Cr.App.1972); Adair v. State, 482 S.W.2d 247 (Tex.Cr.App.1972); Ochoa v. State, 444 S.W.2d 763 (Tex.Cr.App.1969); Perry v. State, 164 Tex.Cr.R. 122, 297 S. W.2d 187 (1957).

Thus, in furnishing the "affirmative link" between the accused and the narcotic, additional independent facts and circumstances *must* be established indicating the accused's knowledge of the narcotic as well as his control over such. Collini v. State, supra; Adair v. State, supra; Harvey v. State, supra. It is this burden the State has wholly failed to meet.

Viewing the evidence in the light most favorable to the jury's verdict, we find only that (1) even though appellant became the lessee of the premises the day before, he was not present at the time the search warrant was executed nor was he shown by the testimony of any witness to have been in the apartment after it was leased; (2) since two other persons were present at the time of the search were also shown to have been occupying the apartment, appellant was not shown to be in exclusive possession thereof; (3) since the narcotics were not in plain view in the kitchen and contained in *unidentified* shirt pockets hanging in the hall closet, knowl-

edge is not shown. Cf. Slaton v. State, 418 S.W.2d 508 (Tex.Cr.App.1967).[1]

Other than the fact that appellant had leased the premises searched, no other evidence established the requisite circumstances excluding every other reasonable hypothesis even though it cast suspicion on him. See and compare Collini v. State, supra; Harvey v. State, supra; Hausman v. State, 480 S.W.2d 721 (Tex.Cr.App.1972); Payne v. State, 480 S.W.2d 732 (Tex.Cr.App.1972); Carr v. State, 480 S.W.2d 678 (Tex.Cr.App.1972); Morrow v. State, 478 S.W.2d 941 (Tex.Cr.App.1972); Haynes v. State, 475 S.W.2d 739 (Tex.Cr.App.1971); Culmore v. State, 447 S.W.2d 915 (Tex. Cr.App.1969); Slaton v. State, supra; Brock v. State, 162 Tex.Cr.R. 339, 285 S. W.2d 745 (1956); Williams v. State, 498 S.W.2d 34 (Tex.Cr.App.1973).

■■ There also exists another reason why the conviction for possession of methamphetamine cannot stand. The evidence is insufficient to show that any of the substances recovered were in fact methamphetamine. After the chain of custody was established, one chemist testified that the substance he examined contained marihuana. Dr. Morton Mason then took the stand and related he examined the other substances. He testified that one of the exhibits shown him contained methadone hydrochloride, another exhibit contained caffeine and another an antibiotic preparation. He did not identify any of the substances as methamphetamine and used the term "methadone" throughout his testimony. The only reference to methamphetamine was in answer to a question on cross-examination when he stated methamphetamine would be "administered through prescription." The State concedes the witness did not identify any substance as methamphetamine, but claims that this was "a slip of the tongue," and contends there was some confusion between the laboratory numbers on certain exhibits and the identifying numbers given the exhibits by the court reporter. The exhibits, as is usual in narcotics cases, are not in the record before us, but there is also an absence of description of any of the exhibits. The evidence is clearly insufficient to show possession of methamphetamine, a dangerous drug. Methadone hydrochloride is a narcotic drug, and is not a trade or generic term for methamphetamine. 13 Amer. Juris., Proof of Facts, p. 406. See Taylor v. State, 172 Tex.Cr.R. 461, 358 S.W.2d 124, 125 (1962), where a conviction for possession of dolophine shown to be indistinguishable from methadone hydrochloride, a narcotic drug, was upheld under the provisions of Article 725b, Vernon's Ann. P.C. (the Uniform Drug Act). Thus methadone is a narcotic drug, not a dangerous drug under the provisions of Article 726d, Vernon's Ann.P.C. (Dangerous Drugs Act).

In view of our disposition of this case, we will not discuss the other grounds assigned by appellant.

For the reasons stated, the judgments are reversed and the causes remanded.

1. The record does not make clear whether the three shirts the co-defendant Warren was allowed to take from the hall closet were the ones in which contraband was found. It was shown that the other shirts in the closet had no laundry marks or other identifying marks or tags.