**Robert Earl SMITH and Elida Cavazos Smith, Appellants,**

**v.**

**The STATE of Texas, Appellee.**

**No. 48893.**

Court of Criminal Appeals of Texas.

Oct. 23, 1974.

**750**

Clyde W. Woody and Marian S. Rosen, Houston, for appellants.

Carol S. Vance, Dist. Atty., Phyllis Bell, Charles Cate, Asst. Dist. Attys., Houston, and Jim D. Vollers, State's Atty., Austin, for the State.

## OPINION

GREEN, Commissioner.

Appellants Robert Earl Smith and Elida Cavazos Smith, husband and wife, were jointly indicted and tried for unlawful possession of heroin, a narcotic drug. The jury returned a verdict of guilty against each appellant. The court assessed punishment of Robert Earl Smith at ten years' confinement and of Elida Cavazos Smith at three years, probated.

The record reflects that at 7:50 P.M., October 14, 1971, five police officers, armed with a search warrant, went to a house located at 9711 Rachel Street in Houston, alleged in the warrant to be the residence of appellants, for the purpose of searching for narcotics stated to be in their possession. Officer Gonzales, who headed the group, testified before the jury substantially as follows:

When the officers reached the house, they were admitted by Herlinda Landa after showing her the warrant. Herlinda Landa and her husband, Daniel, and the appellants resided in the house, and, with their small children, were its sole residents. As he entered, Gonzales saw appellant Elida Smith come into the hallway from a back bedroom. Gonzales and Officer Zavala went in this bedroom after showing Elida the search warrant, while Officer Avila and the other two officers searched the living room and other two bedrooms. Gonzales found a brown sack wrapped in tinfoil with a plastic bag inside it about midway between the mattress and the box springs of the bed. This plastic bag contained a quantity of brown powder which was subsequently proved to be 4% pure heroin. Appellant Elida Smith and the

other woman occupant of the house, Herlinda Landa, were placed under arrest before the heroin was found, and were put in custody of officers in the living room.

Officer Gonzales testified that the officers entered the house at 7:50 P.M., and that he found the heroin at 8:00 P.M. Appellant Robert Smith was not present in the house at 7:50 P.M. He arrived at 7:55 P.M., and was promptly placed under arrest by Officer Avila and the other two officers with him while Gonzales was searching the back bedroom and before the sack above mentioned was found.

Gonzales testified that while he knew that the Smiths and the Landas lived in this house, he did not know whose bedroom it was in which the heroin was found.

The next two witnesses, one of whom was a police chemist, established a proper chain of custody of the substance found in the bedroom by Gonzales, and established that the brown powder in the plastic bag was 4% pure heroin, a narcotic drug.

The fourth and last witness for the State was Officer G. Avila. He testified that he participated with Officer Gonzales and three other officers in the search of the residence at 9711 Rachel Street on October 14, 1971. Gonzales was in charge of the search. After entering the house, he remained in the front portion and about five minutes later, at 7:55 P.M., he saw appellant Robert Smith get out of a truck and come into the living room. Avila and Officer Zavala immediately showed him the search warrant, read him his legal rights from the police card,[1] and placed him under arrest. Appellant Elida Smith was present in the room, under arrest. Approximately 10 to 15 minutes after Robert Smith had been arrested, Officer Gonzales came into the living room, showed him the bag found under the mattress in the back

bedroom, and asked him: "What is this?" Smith answered "It is mine." Gonzales again asked: "What is this?" Smith answered, "It is stuff." The witness explained that "stuff would be very well known as a substitute word for heroin."

Avila did not know who lived in the house; he stated that Gonzales was in charge, and he only knew that the two women with some small children were present when the officers got there, and that appellant Robert Smith arrived five minutes later.

The appellants did not testify, and no witnesses were placed on the stand by them.

In their ninth ground of error, appellants argue that the trial court committed reversible error in admitting in evidence, over their proper objections, the oral incriminating statements of appellant Robert Smith made to the officers while he was under arrest and in custody, in violation of Article 38.22, V.A.C.C.P.

On the day the case went to trial, a hearing was held before the court on appellants' motion to suppress certain evidence, including all statements and confessions, oral or written, made by either appellant while under arrest. At this hearing Officer Gonzales testified substantially as we have summarized his evidence given before the jury, with the addition that he also testified to his conversation with appellant Robert Smith while the latter was in custody.[2]

According to the State's evidence, appellant Robert Smith, who arrived at the house about five minutes after the officers started their search, was arrested immediately as he entered, and kept in custody of the officers in the living room with Herlinda Landa and appellant Elida Smith. It

---

1. The warnings read to appellant Robert Smith are in the record, and comply with the requirements of Miranda v. Arizona, 384 U.S. 436, 86 S.Ct. 1602, 16 L.Ed.2d 694, and with Article 38.22, Vernon's Ann.C.C.P.

2. Gonzales was not asked about this conversation before the jury. The conversation was given to the jury by the witness Avila, as hereinabove stated, over the objections of appellants.

was ten to fifteen minutes later that Officer Gonzales entered the living room with the sack found in the back bedroom and had the brief conversation with Robert Smith as heretofore stated.

█ Ordinarily, oral statements by one in custody about a crime for which he is being held are not admissible in evidence against him.[3] Article 38.22, V.A.C.C.P.; Easley v. State, Tex.Cr.App., 493 S.W.2d 199; Pierson v. State, 145 Tex.Cr.R. 388, 168 S.W.2d 256. This Court, in construing our confession statutes, has further excluded any act tantamount to or in the nature of a confession and any unwarned statement even though it lacks the essential elements of a confession. Easley v. State, supra; Garner v. State, Tex.Cr.App., 464 S. W.2d 111.

Under the ninth ground of error now under consideration, we are not met with a violation of appellants' federal constitutional rights since the record reflects that the Miranda warning was given to both appellants prior to the statement of Robert introduced in evidence. Cf. Smith v. State, Tex.Cr.App., 507 S.W.2d 779; Brown v. Beto, 5 Cir., 468 F.2d 1284.

Neither do we have a case in which an oral statement of the accused was found to be true which led to the discovery of any evidence conducing to establish guilt. See Article 38.22, 1(e), V.A.C.C.P.; Chase v. State, Tex.Cr.App., 508 S.W.2d 605. The contraband had been found prior to the conversation between Gonzales and Robert Smith, and nothing was discovered by the officers as the result of Smith's replies to the officer's questions. The State's contention that Chase, supra, supports the admissibility of the conversation is without merit.

The State argues that the statements of appellant Robert Smith were admissible under the provision of Article 38.22, 1(f) providing that "Nothing contained herein shall preclude the admissibility of . . . any statement that is the res gestae of the arrest or of the offense."

█ In determining whether certain statements are admissible as res gestae, each case must be considered on its own merits. Patterson v. State, Tex.Cr.App., 458 S.W.2d 658.

In Graham v. State, Tex.Cr.App., 486 S. W.2d 92, we said:

"Generally, three requirements must be met before evidence can be admitted under the so-called 'true res gestae rule.' There must have been an exciting, emotionally stimulating or physically painful event, the admission or assertion must have been made so soon after the occurrence that the declarant is still in the emotional grip of the shocking event, and the assertion must relate to the event before evidence can be admitted under this exception. The State fully developed the exciting and emotionally stimulating event but failed to establish the period of time between the event and the assertion and did not develop the emotional state of the declarant when he made the admission. Nevertheless, the statements were still admissible under other grounds."

In Graham, the Court found that the defendant was not under arrest when he made the inculpatory statements, and that hence Article 38.22, V.A.C.C.P., was not applicable.

█ The statements of appellant Robert Smith "It is mine" and "It is stuff" were not made spontaneously, but were made in answer to questions addressed to him by Officer Gonzales some ten to fifteen minutes after Robert had been arrested.

---

3. One exception is where the very crime in issue, as well as acts and statements in connection with it, take place while the defendant is in custody for another offense. Anderson v. State, Tex.Cr.App., 479 S.W.2d 57.

There is no showing in the record that the declarant was excited or emotionally stimulated or in the emotional grip of any shocking event. The State made no effort to show any such condition of Robert Smith, and the record is silent as to his condition or emotional status. The elements of res gestae are not present under the circumstances. Garner v. State, supra; Martinez v. State, Tex.Cr.App., 498 S.W. 2d 938; Graham v. State, supra; Patterson v. State, supra.

In *Garner, supra,* we said:

"The State contends that the statements made by the appellant at the police parking lot and in the elevator were res gestae statements.

"It appears from the record that the statements were made approximately an hour after the robbery and some ten or more minutes after the arrest. There is no showing of spontaneity or excitement or anything that would make the statements res gestae of the offense or of the arrest. See Rubenstein, alias Ruby v. State, Tex.Cr.App., 407 S.W.2d 793, and the cases there cited."

*   *   *   *   *   *

"The court erred in admitting into evidence the statements of appellant while he was under arrest."

Considering the evidence in this case, we hold that the court committed error in admitting the inculpatory statements of appellant Robert Smith made while he was under arrest.

■ It might be argued that the statements were not inculpatory as to appellant Elida Smith and thus no harm is shown as to her. However, the record shows that the manner in which they were used to prove guilt of both appellants establishes that harmless error is not presented as to either appellant. They were prosecuted as husband and wife, both in joint possession

of the contraband. The State, in argument to the jury, argued in connection with the oral statements of Robert Smith that "It is certainly reasonable to believe that a husband would cover for his wife. I don't think there is a husband among us who wouldn't, but, ladies and gentlemen, you are going to have to determine, in order to find Mrs. Smith guilty, that she did not act together in pursuance of a common intent."

Throughout the State's argument of the case to the jury, the oral statements were stressed as evidence of a common knowledge and interest of a husband and wife's joint possession.

We do not find that the error in admitting the oral statements was harmless as to either appellant. See Lege v. State, Tex. Cr.App., 501 S.W.2d 880; Schuenemann v. State, Tex.Cr.App., 501 S.W.2d 319.

There is an additional reason why the judgments in this case must be reversed. In their fifth ground of error, appellants contend that the evidence is insufficient to support the verdicts of the jury.

■ Viewing the evidence in the light most favorable to the verdict, and excluding the inadmissible oral statements of Robert Smith, we find only that two couples jointly used this house as their residence; that Mrs. Landa and Mrs. Smith were both present when the officers arrived, and were in the living room under arrest when the heroin was found in the bedroom (one of three such rooms); that appellant Robert Smith arrived after the search was started, but before the heroin was found, and that heroin was found between the mattress and the bedsprings in a bedroom from which appellant Elida Smith was seen leaving. There was no admissible evidence to link appellants with the contraband, or with the room in which the heroin was found; there was no evidence that either appellant ever used heroin or any other narcotic; no narcotic

drug was found upon either; the State made no attempt to show exclusive use of the room by appellants; there was no circumstance shown in evidence which tended to prove either control of the narcotic or knowledge of its existence.

■ In furnishing the affirmative link "between the narcotic and the accused," additional facts and circumstances must be introduced to show both knowledge of the narcotic and exercise of control over it. Collini v. State, Tex.Cr.App., 487 S.W.2d 132; Wright v. State, Tex.Cr.App., 500 S.W.2d 170. In Williams v. State, Tex.Cr.App., 498 S.W.2d 340, 341, we quoted from Collini v. State, supra, as follows:

"Where an accused is not in exclusive possession of the premises, it cannot be concluded that he had knowledge of the narcotic and had control of it unless there are additional independent facts and circumstances which affirmatively link the accused to the narcotic. Harvey v. State, supra (Tex.Cr.App., 487 S.W.2d 75); Adair v. State, supra (Tex.Cr.App., 482 S.W.2d 247); Payne v. State, supra (Tex.Cr.App., 480 S.W.2d 732); Hausman v. State, supra (480 S.W.2d 721). See Petty v. People, 167 Colo. 240, 447 P.2d 217 (1968) and cases there cited."

See, also, Culmore v. State, Tex.Cr.App., 447 S.W.2d 915.

The independent facts and circumstances to show control and knowledge are absent here. The fifth ground of error is sustained.

In view of our disposition of the appeal, it is not necessary that we consider appellants' other grounds of error.

For the errors as above stated, the judgments are reversed, and the cause against both appellants is remanded.

Opinion approved by the Court.

DOUGLAS, J., concurs in the result.