**Mario ALMANZA, Appellant,**

v.

**The STATE of Texas, Appellee.**

No. 1266–91.

Court of Criminal Appeals of Texas, En Banc.

Sept. 16, 1992.

Rehearing Denied Oct. 21, 1992.

Michael R. Latimer, San Antonio, for appellant.

Steven C. Hilbig, Dist. Atty., and Lyndee Bordini, Patrick Hancock and Edward F. Shaughnessy, III, Asst. Dist. Attys., San Antonio, Robert Huttash, State's Atty., Austin, for the State.

## OPINION ON APPELLANT'S PETITION FOR DISCRETIONARY REVIEW

MILLER, Judge.

Appellant was convicted of the offense of possession of heroin in an amount less than 28 grams. During a pretrial suppression hearing, he moved, pursuant to Article 38.-22, § 3(c) V.A.C.C.P., that an oral confession be excluded from evidence; that request was denied. At trial, the court informed appellant that he would be allowed to appeal the pretrial decision, and appellant pled guilty to the offense. As a repeat offender, he was sentenced to 35 years confinement in the Texas Department of Criminal Justice, Institutional Division. Appellant chose to appeal, and, in an unpublished opinion, his conviction was affirmed. *Almanza v. State,* No. 04–91–

---

00148–CR (Sept. 4, 1991). Appellant petitioned this Court, and we granted review to determine whether or not the confession should have been admitted. We will reverse the decision of the court below.

## I.

Officers of the San Antonio Police Department had been told by a confidential informant that heroin was being sold at a certain apartment and, following several days of investigation, they procured a search warrant. On October 23, 1989, police arrived at the apartment to execute the search and found appellant standing in the front doorway speaking with an unidentified black man. The warrant was shown to appellant and officers entered and systematically moved throughout dwelling, arresting and handcuffing appellant, a woman and her child. Appellant was given his *Miranda*[1] warnings and questioned.

According to the testimony of arresting Sergeant Hardeman, a member of the San Antonio Police Department's Repeat Offenders Project, appellant stated that "he did sell narcotics at the residence[,]" but that "[h]e only sold them out in the yard, that Josie [the lessee of the premises] knew about it and that's—he couldn't sell them anywhere else. And he couldn't sell them out of the house[2]." S.F. II:6. Sergeant Hardeman also stated that appellant told him that he had sold out of drugs. S.F. I:14. Hardeman then warned appellant that the police would make a "thorough search of the premises[,]" and that "[i]f he wished to tell [them] where [the heroin] was, that [the police] would still search, but it would make things a lot easier for [them]." S.F. I:13. A discussion between appellant and the lessee took place in Spanish, and, while the details of that conversation are unknown, Hardeman testified that appellant said "he would show us." S.F. II:17. The officer further testified that the appellant, handcuffed, led him to the bedroom and nodded toward a dresser on

which the drugs (and various other items) were located. S.F. II:13. On redirect examination, Hardeman was again questioned about appellant's apparent confession:

Q. [By the Assistant District Attorney] And you weren't talking about pocket change. You wasn't [sic] talking about glasses. You were talking about heroin?
A. [Sergeant Hardeman] We were talking about heroin, controlled substances.
Q. And he went in the back bedroom, and willingly, and showed—indicated something on the dresser?
A. Yes.

&ast; &ast; &ast; &ast; &ast; &ast;

Q. How is it that the witness indicated the piece of paper out to you?
A. He nodded and said that it was—what was in the paper was his personal stuff.
Q. And did you then point to the paper and verify?
A. Yes.
Q. And what happened—how did that come about?
A. When he nodded, I asked him what was in the paper, and he said it was his personal stuff.
Q. And that later turned out to be heroin?
A. Yes.

&ast; &ast; &ast; &ast; &ast; &ast;

S.F. II:18–19.

Earlier, on cross examination, Sergeant Hardeman had been questioned about the contents of the dresser on which the contraband was ultimately found. Asked whether the items shown in State's Exhibit C (a photograph of the dresser) were on it when the defendant acknowledged that the paper was his "personal stuff," Hardeman responded:

A. To the best of my recollection, yes, sir.
Q. So, there was more than just this rolled-up piece of paper with alleged

1. *Miranda v. Arizona*, 384 U.S. 436, 86 S.Ct. 1602, 16 L.Ed.2d 694 (1966).

2. The record contained conflicting testimony regarding the status of the relationship between appellant and Josie, the woman who, at the time of the arrest, was also present in the apartment. The police testified that an informant had told them that appellant was Josie's common-law husband, while the appellant maintained that she was an ex-girlfriend who had agreed to allow him to use her address for postal and

parole purposes. The record reflects that at the time that appellant was arrested he had only recently been paroled from prison, had lived for some time with his sister, and that Josie was the lessee of the premises. Because the prosecution did not offer evidence establishing the marital status of the two, we will not engage in the presumption of common-law marriage. Thus, we will consider Josie the apartment's sole tenant.

drugs in it and just that on top of the dresser, there were more items on the dresser at that time?

A. Yes, sir.

Q. And when the defendant acknowledged "that that's my personal stuff," you knew that he was referring only to this little parcel of paper wrapped up, and not any of the other various items on top of that dresser?

A. *That's what we had asked him to direct us to;* yes, sir.

Q. Well, when you saw the rolled-up piece of paper, when he said "that's my personal stuff" you didn't know that there were any drugs there, did you?

A. No.

Q. In the course of your search would you have gone through the top of the dresser?

A. Yes, sir.

Q. In fact, you did later on proceeding with the search throughout the house, right?

A. The search team did search the house; yes, sir.

Q. The defendant never stated to you nor did you hear this defendant ever state to any other officers at the residence that "the heroin is mine"?

A. I never heard him refer to it as heroin.

Q. Did he ever refer to it as drugs?

A. No, sir.

Q. Or narcotics?

A. *He referred to it as his personal stuff.*

\* \* \* \* \* \*

S.F. II:15–16 (emphasis added).

As noted above, at the pre-trial suppression hearing the trial court admitted the evidence but allowed appellant to appeal his ruling following the guilty plea. On appeal, appellant maintained that admission of the confession violated Article 38.22, V.A.C.C.P., because it had not been reduced to writing or otherwise recorded. In opining that the statement was admissible, the Fourth Court of Appeals noted that

[a]ppellant makes much of the fact that there were other items on the dresser top along with the wadded paper, such as a comb and money. Appellant contends he could have been referring to any item in the room when he simply nodded his head, did not touch anything, and made the generic comment "it's my

personal stuff." He points out that he did not use the words "heroin," "drugs," or "narcotics." However, Hardeman testified that it was understood between him and appellant that they were talking about drugs and not about a comb or money. Hardeman pointed to the paper and asked if this is it, to which appellant responded affirmatively.

\* \* \* \* \* \*

Appellant's statement to the effect that heroin was in the wadded-up paper on the dresser was found to be true, and that statement, that it was his "personal stuff," conduces to establish his guilt.

*Almanza, supra,* slip op. at 3–4.

## II.

In his petition to this Court, appellant argues that the court of appeals erred in holding that the statement was admissible, and refers to our disposition in *Port v. State*, 791 S.W.2d 103 (Tex.Crim.App.1990), as instructive. There, police were informed that a mail carrier had not returned from her delivery rounds and an investigation ensued. *Id.* at 105. While investigating her route, an officer was contacted by Port's father and informed that his son was also missing and that there were bullet holes in their house. *Id.* The police were shown the house and a recently fired pistol, and began to search for Port. *Id.* He was eventually apprehended and placed in custody where he admitted shooting the postal carrier. *Id.* During transport to the police station, he made a more detailed admission in which he stated that he knew he had "hit [shot] her at least two times, maybe on the head...." *Id.* On arrival at the station, an officer removed the pistol from the trunk of the patrol car and Port, exiting the car, asked if it was his gun. *Id.* at 106. He was told that it was, and he stated that it was the one used in the murder. *Id.* A later autopsy confirmed that Port's pistol had fired the fatal shots. *Id.* On the State's petition to this Court, we reviewed a lower court's decision finding that the statement did not lead to the discovery of evidence conducing to establish guilt, and held that his statements were properly admissible because the

relevancy requirement was met ... where appellant's oral statements that he used his .22 calibre pistol to shoot the victim were verified by the later discoveries, respectively, that the victim's cause of death was two gunshot wounds to her head and that his ... pistol was

ballistically proven to be the murder weapon.

*Id.* at 108; *see also Briddle v. State,* 742 S.W.2d 379 (Tex.Crim.App.1987), *cert. denied,* 488 U.S. 986, 109 S.Ct. 543, 102 L.Ed.2d 573 (1988).

As stated, the evidence in *Port* was admissible because the later autopsy corroborated Port's earlier oral statement. Our discussion in *Romero* noted that

> [w]e recently had occasion to interpret Art. 38.22, Sec. 3(c) in *Port v. State* [cite omitted]. Specifically, we delved into the meaning of "contains assertions of fact found to be true which conduce to establish the defendant's guilt". In *Port,* shortly after the defendant was taken into custody, he orally admitted shooting the deceased twice in the head and orally identified the murder weapon as the gun he "shot her with". A subsequent autopsy revealed that the deceased was shot twice in the head and that the gun the defendant identified was the weapon from which the bullets were fired. Thus, the results of the autopsy "found to be true" the facts from the defendant's oral statements, and the statements were thus properly admitted. Implicit in this holding was the notion that "found to be true" means facts about which the police are *unaware* at the time of the confession are *later,* after the confession, found to be true.

*Romero v. State,* 800 S.W.2d 539, 544–45 (Tex.Crim.App.1990) (emphasis in original).

Additionally, this Court has previously addressed a fact scenario similar to that found in this case. In *Smith v. State,* 514 S.W.2d 749 (Tex.Crim.App.1974), the police, pursuant to a valid warrant to search for drugs, went to a house shared by two families. *Id.* That appellant arrived at the house approximately five minutes into the search, and was arrested. *Id.* Ten to fifteen minutes later, an officer brought a brown sack (wrapped in tinfoil) into the living room and began asking: "What is this?", to which appellant responded: "It is mine" and "It is stuff." *Id.* at 750–752. Testimony from an officer revealed that " 'stuff would be very well known as a substitute word for heroin.' " *Id.* at 751. Deciding the case under the version of Article 38.22 then in effect[3], this Court found "we [did not] have a case in which an oral statement of the accused was found to be true which led to the discovery of any evidence conducing to establish guilt." *Id.* at 752. The trial court, therefore, had erred in admitting the statements[4]. *Id.* at 753; *see also Scott v. State,* 564 S.W.2d 759, 760 (Tex.Crim.App.1978) (defendant's response to officer's inquiries as to ownership of pistol discovered in search held inadmissible as neither res gestae nor discovery of evidence conducing to establish guilt).

### III.

In the present case, the appellant was under arrest; therefore, any questioning by the police was necessarily a form of custodial interrogation. Article 38.22 thus applies to this case, and we must ask: Did appellant's statement assert facts, previously unknown to the police, which were later found to be true, and, if so, does this statement show appellant is guilty of the offense for which he is charged? It seems apparent from the record that the statements and actions of the appellant were made contemporaneous with and in response to solicitations by the police. Like *Smith, supra,* this is not a case in which a defendant leads investigators to the scene of a crime to unearth evidence previously unknown to them, nor is it one in which the police (or others) discover evidence which serves to verify a defendant's statements.

As *Port* and *Romero* make clear, it is not the timing of the oral statement, alone, which determines its admissibility. Rather, it is the combination of the oral statement and the subsequent discovery of previously unknown evidence independently verifying the statement which provides the reliability necessary to invoke the limited exception to Article 38.22. When analyzed according to these strictures, and mindful of our decision in *Smith,* it is apparent that the facts of the cause *sub judice* do not favor the admission of the statement. To say that the phrase "personal stuff" was verified as contemplated by article 38.22 when the "stuff" was later found to be heroin is to take the *Port* holding out of context and

---

3. The 1967 amendment to the original 1965 act, which was in effect at that time, differs little from the current statute. *Cf.* Tex.Code Crim.Proc. Ann. art. 38.22 § 1(e) (Vernon supp.1967) *with* Tex.Code Crim.Proc.Ann. art. 38.22 § 3(c) (Vernon supp.1990).

4. Additionally, this Court found that the statement was not a part of the res gestae of the offense. *Smith,* 514 S.W.2d at 753.

distort it. Under the reasoning in *Smith* and contrary to the view espoused in the opinion below (unlike the statements in *Port*), we believe appellant's statement did not lead to the discovery of evidence which later verified it; thus, the statement did not conduce to establish his guilt. What we have here is nothing more than a mere assertion of guilt. The justification for allowing the admission of the confession in *Port* is not found in this case, and the statement should not have been admitted into evidence.

Accordingly, the judgment of the Fourth Court of Appeals is reversed, and the cause is remanded to that court to determine whether the appellant has been harmed by the admission of the statement.[5]

McCORMICK, P.J., concurs in the result.

WHITE, Judge, concurring.

Though I concur in the majority's decision to reverse the conviction in the instant case, I strongly disagree to the majority's reliance upon *Smith v. State*, 514 S.W.2d 749 (Tex.Cr.App.1974), in an effort to retreat from this Court's decision in *Port v. State*, 791 S.W.2d 103 (Tex.Cr.App.1990). In the conclusion of its opinion, the majority states:

> "Under the reasoning in *Smith* and contrary to the view espoused in the opinion below (unlike the statements in *Port*), we believe appellant's statements did not lead to the discovery of evidence which later verified it; thus, the statement did not conduce to establish his guilt."

By virtue of this oblique reference to the opinion in *Smith v. State*, the majority has written back into the law of TEX.CODE CRIM.PROC.ANN. Art. 38.22 the requirement that for an oral statement to be admissible, it must itself lead to the discovery of evidence which is conducive to establishing the guilt of the accused. I will not join with the majority in this attempt to undo this Court's decision in *Port*.

In *Port*, this Court wrote:

> "Article 38.22, § 3(c) provides that a properly warned oral statement resulting from custodial interrogation is admissible if it:
>
> ... contains assertions of fact or circumstances that are found to be true and which conduce to establish the guilt of the accused, **such** as the find-

ing of secreted or stolen property or the instrument with which he states the offense was committed. (Emphasis added).

This Court stated in *Briddle v. State*, 742 S.W.2d 379 (Tex.Cr.App.1987), that the examples given in the above statute are for illustrative purposes only and do not act as a limitation on oral statements which conduce to establish an appellant's guilt and are shown to be true. See also, *Valtiero v. State*, 153 Tex.Crim. 260, 219 S.W.2d 73 (Tex.Cr.App.1949). While some case law indicates that the oral confession or statement must lead to the recovery of items or information before the oral confession or statement is admissible, the statute plainly requires only that the statement assert "facts or circumstances that are found to be true and which conduce to establish the guilt of the accused." The statute places no limitation upon the manner in which the facts asserted are found to be true. *Briddle*, 742 S.W.2d, at 388. After *Briddle*, it is well established that oral statements made by an accused need not lead to or result in the discovery of incriminating evidence as long as the requirements of the statutes are met."

*Port v. State*, 791 S.W.2d, at 106. This Court went on to hold that the defendant's oral statements were admissible under the requirements of Art. 38.22 § 3(c). *Port v. State*, at 108.

In the instant case, this Court's decision should rest solely upon whether the oral statement of appellant to the police were "found to contain true assertions of facts or circumstances which conduced to establish appellant's guilt." *Port v. State, supra.* There is no limitation that there be a connection between the oral statement made and the manner in which it was found to be true. *Port v. State, supra;* and *Briddle v. State*, 742 S.W.2d, at 388.

I refuse to join the majority's attempt to create a requirement that there be such a limitation. With that understanding, I concur in the judgment of the majority.

CAMPBELL, J., joins this concurrence.

---

**5.** *See* Tex.R.App.P. 81(b)(2).