Barbara Lucy **EBERT**, Appellant,

v.

**STATE of Texas, Appellee.**

**No. 13–92–036–CR.**

Court of Appeals of Texas, Corpus Christi.

Jan. 28, 1993.

Rehearing Overruled Feb. 25, 1993.

Bill May, Corpus Christi, for appellant.

Carlos Valdez, James D. Rosenkild, Corpus Christi, for appellee.

Before DORSEY, SEERDEN and FEDERICO G. HINOJOSA, Jr., JJ.

## OPINION

DORSEY, Justice.

A jury found appellant guilty of possession of cocaine and assessed punishment of ten years' imprisonment and a $10,000 fine. By two points of error, appellant contends that the trial court erroneously admitted evidence of statements made by her after she was arrested and improvidently denied her motion for directed verdict. We reverse and remand.

Six or seven officers of the Corpus Christi Police Department entered 713 Scotland # 1, purportedly the home of Barbara Lucy Ebert, at approximately 11:55 p.m. on May 8, 1991. The officers had received a tip that drugs were being trafficked out of the house. Upon entering and securing the house, the police officers saw baggies of white powdery substance and drug paraphernalia, including a scale, baggies, folded playing cards, and cash in plain view on two dressers in the master bedroom. A man in the bedroom at the time was taken into custody after great resistance.

The remaining three occupants of the house, including Ebert, were arrested and read *Miranda* warnings. The police then searched the house, finding, among other things, several documents addressed to Barbara Ebert. Next, the police officers asked Ebert if she wanted to cooperate by showing them the drugs located in the house. Ebert led the officers to the master bedroom and pointed to the drugs and paraphernalia already viewed by the officers. When asked if any other drugs were con-

cealed in the room, she responded, "No, just what you see here in the room."

■ Ebert filed a motion to suppress the nonverbal statement showing the police the location of the drugs and the oral statement that the contraband she pointed to was the only quantity of drugs in the house. The trial court denied the motion. At trial, while one of the police officers testified to Ebert's actions and statement, Ebert's counsel objected to the admissibility of that testimony.

The legal principle at issue in this case is found in TEX.CODE CRIM.PROC.ANN. art. 38.-22(3) (Vernon Supp.1993). Generally, no oral or sign language statement of an accused made as a result of custodial interrogation shall be admissible against an accused in a criminal proceeding. TEX.CODE CRIM.PROC.ANN. art. 38.22(3)(a). If the statement is properly recorded after the accused's voluntary waiver of her rights and the accused's attorney receives a true and correct copy of the statement intended to be admitted, the statement may be admissible. TEX.CODE CRIM.PROC.ANN. art. 38.-22(3)(a)(1)–(5). In this case, no such recording was made.

However, particularly important to this case is article 38.22(3)(c) (Vernon Supp. 1993), which provides,

Subsection (a) of this section shall not apply to any statement which contains assertions of facts or circumstances that are found to be true and which conduce to establish the guilt of the accused, such as the finding of secreted or stolen property or the instrument with which he states the offense was committed.

Ebert contended at trial, and reiterates on appeal, that her nonverbal and verbal statements did not conduce to establish her guilt because the cocaine at issue had already been discovered by the police. The State responds that her statements established her knowledge and control over the substance.

A synopsis of the interpretation and application of article 38.22 is necessary here. A recent case, *Almanza v. State*, 839 S.W.2d 817 (Tex.Crim.App.1992), is closely on point factually. After a confidential informant alerted the police officers to drug activity at a certain apartment, the police investigated for several days, then obtained a warrant. *Almanza*, 839 S.W.2d at 818. The police secured the apartment, arresting Almanza in the process. *Id.* After he was read his *Miranda* rights, appellant was asked whether he would "make things easier for" the police by telling them where the heroin was located. *Id.* Almanza led the police to a bedroom and nodded towards a dresser. *Id.* at 818–19. On top of the dresser were personal items, one of those items being a rolled-up piece of paper. Almanza told the police that "his personal stuff" was in the paper. *Id.* at 819. The police later searched the items on the dresser and determined the substance inside the paper to be heroin. *Id.*

The defendant never referred to the items on his dresser as being or containing heroin. The police did not know at the time Almanza nodded towards the dresser and the rolled-up paper that drugs were actually inside. Moreover, the police testified that they searched and tested the items on the dresser, an action they would have taken notwithstanding Almanza's statements. *Id.* Appellant objected to the verbal statement as being violative of article 38.22(3)(c). The State contended that the police officers specifically asked Almanza to direct them to any narcotics in the house, and he led them to the dresser. Narcotics were in fact found on the dresser.

The Court of Criminal Appeals held that Almanza's verbal statement was made in response to questions asked by the police, yet that statement did *not* lead the police to the scene of a crime or unearth evidence of which the police were unaware. *Id.* at 821. Moreover, the police did not later discover evidence that verified Almanza's statement. *Id.* The Court held that Almanza's reference to the rolled-up paper as his "personal stuff" was *not* later verified when the "stuff" was found to be heroin. *Id.* The Court espoused the test for admissibility under article 38.22(3)(c) as whether the statement "led to the discovery of evi-

dence which later verified it," thus conducing to establish guilt. *Id.*

Several other cases merit discussion here, as the determination of admissibility under article 38.22 hinges on a case-by-case factual analysis. In *Port v. State,* 791 S.W.2d 103 (Tex.Crim.App.1990), the defendant allegedly shot and killed a postal worker. The police arrived at the scene, finding a freshly-fired pistol in the defendant's bedroom, bullet holes in a wall, a bloody footprint in the garage, and the defendant's tennis shoe, which matched the footprint found at the scene. The body could not be found. Police eventually apprehended the defendant, at which time he confessed to murdering the postal worker by shooting her twice in the head with a .22 calibre pistol. He then offered to lead the police to the bayou in which he claimed to have disposed of the body. The body could not be found at that time. Upon arrival at the police station, defendant was escorted from the patrol car; at the same time a pistol was removed from the trunk. He asked the officer if that was his gun, to which the officer replied, "do you recognize it?" The defendant stated that it was the one he used to kill the postal worker. A ballistics test was conducted on the gun, and an autopsy performed on the postal worker's body, found later. Both procedures confirmed the defendant's statements that the woman was killed by two gunshot wounds to the head with the .22 calibre pistol found in the defendant's bedroom.

As a result, the Court held all of the defendant's statements of confession admissible. *Port,* 791 S.W.2d at 108. The Court applied the rule that when an accused makes an incriminating statement while in custody, if the statement is later corroborated by some evidentiary discovery, that statement is admissible. *Id.* at 107–108. With regard to the defendant's statements that the pistol was his and that he used it to kill the postal worker, the Court found that although the pistol was already in the custody of the police, the defendant's statements that he used the gun to kill the decedent were not found to

be true until the ballistics test was run on the gun. *Id.* at 108.

The Court held that no limitation exists concerning the manner in which the facts asserted by the defendant are found to be true. *Id.* at 106 (citing *Briddle v. State,* 742 S.W.2d 379, 388 (Tex.Crim.App.1987), *cert. denied,* 488 U.S. 986, 109 S.Ct. 543, 102 L.Ed.2d 573 (1988)). Moreover, the Court found that the "which conduce to establish the guilt of the accused" portion of article 38.22(3)(c) creates a relevancy requirement for the statements made by the accused. *Id.* The Court stated that Port made assertions of facts and circumstances of which the police were not aware and which only the postal worker's killer could know. Because the defendant asserted that he shot the postal worker twice in the head with his .22 calibre pistol, and because these assertions were later found to be true after an autopsy and ballistics tests, the defendant's statements regarding the manner and means of the postal worker's death were verified. The statements were admissible.

The Court reiterated this necessary prerequisite that the facts asserted by the defendant and later found to be true by the police must be facts about which the police are unaware at the time of the confession. *Romero v. State,* 800 S.W.2d 539, 544–45 (Tex.Crim.App.1990). "The reliability demanded by Sec. 3 is founded upon this premise (that the oral confession contain facts that lead to the discovery of items or information *previously unknown* to the police)." *Romero,* 800 S.W.2d at 545 (citing *Briddle,* 742 S.W.2d at 388) (emphasis theirs).

Texas has long prohibited the use of oral confessions that are obtained while the defendant is in custody because of the fear of fabrication of such statements by law enforcement officers and the uncertainty of "what was really said" when there is a dispute. Article 38.22(3) flatly prohibits the admissibility of all custodial oral confessions, with only two exceptions. The first exception, if the statement be recorded when made, directly addresses the concerns of accuracy and fabrication. Art.

38.22(3)(a)(1). The other exception concerns facts recited in the statement that are found to be true and tend to establish the guilt of the accused and seeks to quiet the same fears. Art. 38.22(3)(c). The examples given in article 38.22(3)(c) are the finding of secreted or stolen property or the instrument with which the defendant says the offense was committed.

However, the courts have difficulty determining the standards when applying the language, "facts that are found to be true." In *Almanza* the Court refused the admission of the statement "that's my stuff," speaking of a rolled-up paper containing heroin on top of a dresser. Discovering that the paper indeed contained heroin was not the type of verification required to make the statement reliable. In *Port*, the statement identifying the pistol was sufficiently reliable because it was verified by subsequent ballistic tests. In *Romero*, the defendant produced a knife and admitted he stabbed the victim. We believe Romero's confession was held to be inadmissable because no extrinsic evidence tended to show the truth of the assertion, such as blood on the knife later found to be the victim's. The test is sometimes phrased in terms of facts leading to the discovery of evidence, previously unknown to the police, that verifies the defendant's statement.

In the case at bar, the police discovered the narcotics in plain view when they secured the apartment prior to arresting its occupants. It was as a result of the discovery that appellant and three others were arrested. Nothing previously unknown to the police was found as a result of the defendant's oral statement. The statement was inadmissable under article 38.22(3)(a) in that it did not meet the exception of section 3(c) of that article. The trial court erred by admitting evidence of the appellant's statements over objection.

■ The State maintains Ebert waived her objection to the entry of the statements, contending that her attorney reiterated all of the testimony during cross-examination of the officers. This occurred after objections to the evidence were overruled on direct examination.

With an article 38.22(3)(c) issue such as this, whether the police had prior knowledge of the facts and circumstances appellant asserted was the crux of appellant's complaint at trial and would be on appeal. It was essential to clarify the chronology of events and the development of the police officers' discovery of evidence. The objection was not waived.

■ When the record reveals a trial court error, we will reverse the judgment unless we find, beyond a reasonable doubt, that the error made no contribution to the conviction or to the punishment. TEX. R.APP.P. 81(b)(2). The jury was instructed that a person commits the offense of unlawful possession of methamphetamine if she intentionally or knowingly possesses any amount of methamphetamine. The jury was further instructed that a person acts knowingly with respect to the nature of her conduct or to circumstances surrounding her conduct when she is aware of the nature of her conduct or that the circumstances exist.

The issue was the defendant's possession or control of the contraband found in the master bedroom. Her statement to the searching officers shows her knowledge of the presence and location of the drugs. The statement was not harmless beyond a reasonable doubt. Point of error one is sustained.

■ Appellant's second point of error assails the sufficiency of the evidence to support her conviction. In particular, she asserts that no independent evidence linked her to the possession of this contraband and that, in fact, another person was occupying the room in which it was found.

The standard of review when determining the sufficiency of the evidence is whether, viewing the evidence in the light most favorable to the jury's verdict, any rational trier of fact could have found the essential elements of the crime. *Jackson v. Virginia*, 443 U.S. 307, 99 S.Ct. 2781, 61 L.Ed.2d 560 (1979); *Barrera v. State*, 820

S.W.2d 194, 195 (Tex.App.—Corpus Christi 1991, pet. ref'd).

■ A person commits an offense if she "knowingly and intentionally possesses a controlled substance." TEX.HEALTH & SAFETY CODE ANN. § 481.115(a) (Vernon 1992). Possession is defined as actual care, custody, control, or management of the substance. TEX.HEALTH & SAFETY CODE ANN. § 481.002(38) (Vernon 1992). The evidence must affirmatively link the appellant to the contraband such that a reasonable inference arises that the accused knew the substance existed and exercised control over it. *Cude v. State,* 716 S.W.2d 46 (Tex.Crim. App.1986). "When an accused is not in exclusive possession of the place where the contraband is found, it cannot be concluded that the accused had knowledge of or control over the contraband unless there are additional independent facts and circumstances which affirmatively link the accused to the contraband." *Cude,* 716 S.W.2d at 47; *Garza Gonzalez v. State,* 783 S.W.2d 774, 777 (Tex.App.—Corpus Christi 1990, no pet.).

Here the arresting officers obtained a warrant to search 713 Scotland ə1 and did so on May 7, 1991. The officers found four persons there, three in the living room and one in the master bedroom. Drugs and paraphernalia were found in the master bedroom.

A letter addressed to Ebert and a utility bill due on May 15, 1991, were found on the kitchen table. The letter was addressed to her "and daughters" at 713 Scotland ə3–C and post-marked May 26, 1989. The utility bill was addressed to "Ehert (sic) Barbara" at 713 Scotland Apt. No. B. A vehicle registration form was found on top of the dresser in the master bedroom issued to Barbara L. Ebert at "713 Scottland (sic) 1" and expires March 1992.

A variety of women's perfumes, cosmetics, and jewelry were on top of and in the dresser on which the drugs were found along with a woman's purse. A Mother's Day card stood on the dresser. A wallet, too, was found, bearing a Harley Davidson insignia closely similar to the one embossed on the tank top appellant was wearing the

day she was arrested. Sufficient evidence existed for a rational trier of fact to find an affirmative link between the appellant, 713 Scotland ə1, and the drugs. Point of error two is overruled.

The judgment of the trial court is REVERSED and the cause REMANDED for a new trial.