Victor DANSBY, Appellant,

v.

The STATE of Texas, Appellee.

No. 1108–95.

Court of Criminal Appeals of Texas, En Banc.

Oct. 2, 1996.

Clinton and Keller, JJ., concurred in result.

McCormick, P.J., and Mansfield, J., dissented.

Frank W. Henderson, Beaumont, for appellant.

Edward J. Marty, Asst. Dist. Atty., Tyler, Matthew Paul, State's Atty., Austin, for State.

---

*OPINION ON APPELLANT'S PETITION FOR DISCRETIONARY REVIEW*

PER CURIAM.

A jury convicted Appellant of involuntary manslaughter and assessed his punishment at confinement for fifty-seven years in the penitentiary. The conviction was affirmed. *Dansby v. State,* —— S.W.2d ——, 1995 WL 498725 (Tex.App.—Tyler, No. 12–93–00061–CR, delivered August 23, 1995). We granted discretionary review to determine whether the Court of Appeals correctly determined that unrecorded oral statements Appellant made to police officers were admissible under Article 38.22, § 3(c), V.A.C.C.P. We will reverse.

Appellant and three others, including the deceased, were involved in an accident when the automobile in which they were riding collided with a tree, crushing the passenger side of the vehicle. Witnesses arriving immediately after the crash saw one of the occupants, Jeff Landrum, emerge from the hatchback of the car, and they saw Appellant coming over the back of the driver's seat. Appellant's younger brother, Richard Dansby, was pinned by his foot in the rear passengers side and was removed with the jaws-of-life. The deceased, Curtis Miller, was wedged in the front passenger seat. At the accident scene, Appellant admitted to several witnesses that he had been driving the car. Appellant suffered a laceration to the forehead and was taken to the hospital. There, he submitted to two separate blood tests, both indicating a blood alcohol level over the legal limit.

Officer Larry Reddic investigated the accident. Based on his investigation at the scene and his interviews with witnesses, he began to focus his investigation on Appellant. Witnesses told Reddic that Appellant was driving and had been drinking. Reddic went to the hospital to interview Appellant after speaking with the surviving occupants of the car and after conducting his investigation at the scene. In response to Reddic's questioning, Appellant admitted he had been driving the car, had been drinking most of the day, and had drunk two cups of gin and wine.[1] Reddic's investigation was complete after he interviewed Appellant. The only new information he learned after taking Appellant's statement was the results of the blood test, which came in after the charges against Appellant had been submitted to the District Attorney's Office.

■ The Court of Appeals held Appellant's unrecorded oral statements were admissible under Art. 38.22, § 3(c), based on its disposition of another point of error holding that Appellant's confession was sufficiently corroborated by independent facts and circumstances.[2] Section 3(c) provides an exception to the requirement that oral statements be recorded. This exception applies to "any statement which contains assertions of facts or circumstances that are found to be true and which conduce to establish the guilt of the accused such as the finding of secreted or stolen property or the instrument with which he states the offense was committed."

The Court of Appeals did not specify what evidence it believed was found to be true as a result of Appellant's oral assertions. The State argues that Appellant's admission that he was driving was corroborated by testimony from eyewitnesses that the manner in which he emerged from the car was consistent with Appellant having been in the driver's seat when the accident occurred. It further submits that the blood test results and testimony from other witnesses that Appellant smelled of alcohol and had been drinking corroborated Appellant's statement that he had consumed alcohol before the wreck.

■ However, police had already been told by witnesses that Appellant was driving and had been drinking. Appellant argues that nothing in his statement led police to the discovery of evidence about which they were not already aware. "Found to be true means facts about which the police were unaware at the time of the confession [which] are later,

---

**1.** It is not clear whether "two cups of gin and wine" meant two cups of gin and two cups of wine, two cups of a gin and wine mixture, or two cups of gin and an undisclosed amount of wine.

**2.** The corpus delicti of a crime cannot be established by the defendant's out-of-court statements alone. See *Fisher v. State,* 851 S.W.2d 298 (Tex. Cr.App.1993).

after the confession found to be true". *Romero v. State*, 800 S.W.2d 539 (Tex.Cr. App.1990).

In *Port v. State*, 791 S.W.2d 103 (Tex.Cr. App.1990), this Court addressed section 3(c). We held that Port's statements that he shot the deceased twice in the head with his gun were found to be true when the autopsy revealed the victim suffered two gunshot wounds to the head and ballistics testing proved that Port's gun fired the shots.

In *Santana v. State*, 714 S.W.2d 1 (Tex.Cr. App.1986), police questioned both Santana and his codefendant independently when both were arrested shortly after a robbery-murder. The codefendant was interviewed first and told police the murder weapons could be found in a field. Santana also told police the location of the weapons. Later, the guns used in the murder were found in the field both men had described. Santana argued that his oral statement did not fit within the exception of section 3(c) because police already knew the location of the weapons when they questioned him, having learned this information from their prior interview of the codefendant. We rejected this claim, holding that until police actually found the weapons, they were unable to verify the truth of Santana's and his codefendant's assertions; thus, neither statement was "found to be true" until the discovery occurred. *Id.* at 14.

On the other hand, in *Almanza v. State*, 839 S.W.2d 817 (Tex.Cr.App.1992), the defendant pointed to a piece of paper on a dressing table and told police it was his "personal stuff." Police found heroin inside the paper. We held that statements that the contents of the paper were Almanza's personal effects were not assertions of fact found to be true which conduced to establish his guilt because the chemical testing which showed the substance was heroin did not satisfy the "found to be true" requirement of section 3(c). We reasoned that Almanza's assertions were only admissions of guilt. *Id.* at 821.

We conclude that the facts in the instant case are more akin to *Almanza*, in that they are merely assertions of guilt. The only arguable segment of Appellant's statement "found to be true" was that he had been

drinking alcohol because it was confirmed by the blood test results. However, when Reddic questioned Appellant about his drinking, Reddic had already been told by the other occupants of the car that Appellant had been drinking, and he was able to independently confirm this when he smelled alcohol on Appellant.

The laboratory testing of Appellant's blood in this case does not satisfy the requirement that the statement contain assertions of facts found to be true, as this Court has previously interpreted that term. All the facts which the State corroborated in Appellant's statements, except for Appellant's specific alcohol concentration, were known before the interview. Thus, his statement was not admissible under the § 3(c) exception.

Accordingly, we reverse the judgment of the Court of Appeals and remand the cause to that court to, among other things consistent with this opinion, conduct a harm analysis pursuant to Tex.R.App.Pro. 81(b)(2) on the trial court's action of allowing appellant's oral statement into evidence.

McCORMICK, P.J., and MANSFIELD, J., dissent.

CLINTON and KELLER, JJ., concur in the result.