In re Billy Ray Thurman















IN THE
TENTH COURT OF APPEALS
 

No. 10-04-00119-CV

IN RE BILLY RAY THURMAN


 

 Original Proceeding
                                                                                                                

MEMORANDUM OPINION
                                                                                                                

      The petition for writ of mandamus is denied.
                                                                   PER CURIAM

Before Chief Justice Gray,
      Justice Vance, and
      Justice Reyna
Writ denied
Opinion delivered and filed June 23, 2004
[OT06]



#160;                                                               

      Ricky Smith appeals a life sentence for murder assessed under a negotiated plea agreement. 
He was originally indicted for capital murder in Cause No. 91-378-C. The court dismissed the
capital-murder indictment, however, in return for Smith's plea of nolo contendere to the lesser
offense of murder in Cause No. 92-5-C. At Smith's request, the court took judicial notice of all
matters, motions, and hearings in Cause No. 91-378-C and included them in the record of Cause
No. 92-5-C. He now appeals the denial of a pretrial motion to suppress his oral confessions
originally filed and determined in Cause No. 91-378-C before the charge was reduced. We will
reverse and remand.
FACTUAL BACKGROUND
      Smith was a suspect in the death of Cheryl Logan because he was known to associate with
Clinnie Childress, a man who had been identified as one of two black males seen in the field where
Logan's body was discovered. Officers arrested Smith on December 8, 1986, after realizing that
he was wanted on an outstanding burglary warrant. After his arrest, Smith talked with officers
about the Logan murder case, indicating that he could account for his whereabouts on the day of
the murder. His statements at this point were exculpatory. The officers did not take a statement
from him at that time. 
      The next day Smith sent a message through a jail guard that he again wanted to talk about the
murder case, and he subsequently gave a written statement to Detective Bill Sanders in which he
admitted being present at the murder but denied taking part in the offense. He stated that he left
when Childress began chasing the girl. 
      On December 10, Smith again told jail personnel that he wanted to talk with Detective
Sanders. After talking with Sanders, Smith gave another written statement on December 10 in
which he told Sanders that Childress grabbed the girl, dragged her into the brush, and began
assaulting her. Smith told Sanders that he tried to make Childress stop but was unable to do so. 
Smith said that he became frightened and ran home. A complaint charging Smith with capital
murder was filed on December 10.
      In mid-December 1986, Smith told a jail deputy that he wanted to speak with investigators of
the Waco Police Department. Smith then told Detective Robert Grissom of the Waco Police
Department two different versions of what had occurred. In his first verbal account to Grissom,
Smith indicated that Childress had grabbed Logan and pushed her down on the ground and that
Smith then ran away. Grissom interviewed Childress and realized that Smith had not told Grissom
what had actually occurred.
      In his second verbal account to Grissom, Smith said that Childress had a gun and told Smith
that he wanted him to "screw" the girl. Because he was scared of Childress, Smith said he did as
he was told. According to this verbal account, Childress then told Smith to "screw her in the
butt." Smith stated that he attempted it but was not sure that he had penetrated her anus. After
the second statement, Grissom told Smith that he needed to get the whole account in writing. 
Grissom indicated that Smith asked him several times, "[I]f I killed the little girl can I still live?"
      At the time Smith made the oral statements, police already had in their possession a report of
the murder victim's autopsy. In his description of Logan's injuries, the medical examiner noted
a laceration in the anal area and further noted that the anus was noticeably dilated. In the findings
addressing sexual assault, the medical examiner noted there were injuries to the mouth, external
genitalia, and anus.
      Smith filed a motion to suppress the written and oral confessions on the grounds that they
were involuntarily given and that the oral statements were not admissible under article 38.22. See
Tex. Code Crim. Proc. Ann. art. 38.22 (Vernon 1979 & Vernon Supp. 1993).
ADMISSIBILITY OF ORAL STATEMENTS
      Section 3(a) of article 38.22 makes in-custody oral confessions generally inadmissible. Id.
art. 38.22, § 3(a). However, section 3(a) "shall not apply to any statement which contains
assertions of fact or circumstances that are found to be true and which conduce to establish the
guilt of the accused, such as the finding of secreted or stolen property or the instrument with
which he states the offense was committed." Id. § 3(c) (emphasis added). 
      In considering the admissibility of an oral statement under the exception in section 3(c), the
crucial questions are: "Did appellant's statement assert facts, previously unknown to the police,
which were later found to be true, and, if so, does this statement show appellant is guilty of the
offense for which he is charged?" Almanza v. State, 839 S.W.2d 817, 821 (Tex. Crim. App.
1992). "Found to be true" means facts the police are unaware of at the time of the oral confession
but are later, after the confession, found to be true. Romero v. State, 800 S.W.2d 539, 544-45
(Tex. Crim. App. 1990) (quoted in Almanza, 839 S.W.2d at 820). An oral statement's reliability
under the exception in section 3(c) is established by the later discovery of previously unknown
evidence independently verifying the oral statement. Almanza, 839 S.W.2d at 821. The facts
asserted must be something more than a mere assertion of guilt. Id. 
FINDINGS AND CONCLUSIONS
      In findings and conclusions filed in Cause No. 92-5-C, the court stated that both the written
and oral confessions were freely and voluntarily given and were not obtained by a denial of due
process. It further found that the oral statements led to the discovery of evidence that was not
known to police officers at the time the statements were made—i.e., that the victim had been
sexually assaulted in the anus. The court also found that Detective Grissom, at the time he talked
with Smith in the McLennan County jail on December 17, was familiar with the Logan case and
knew that an autopsy had been performed on the body, but that neither he nor Smith were aware
that the autopsy report contained evidence supportive of Smith's statement that he had or had
attempted anal intercourse with the murder victim. 
POINTS ON APPEAL
      Smith raises two points on appeal. He claims that the court erred in admitting his oral
statements because they did not contain any facts or circumstances which the officers did not know
or should not have already known, and that no facts asserted in the oral statements were thereafter
verified and found to be true. Smith asserts in point two that there is no evidence to verify the
facts asserted in the statements. We review these points attacking the court's findings under the
rules in Romero, 800 S.W.2d at 543-44.
WAIVER
      The State first argues that Smith waived any complaint about the admissibility of the oral
statements because the motion to suppress was filed, presented, and denied in Cause No. 91-378-C, the prior cause that was later dismissed. Thus, the State contends that Smith failed to comply
with Rule 52(a) by not formally presenting the motion and having it ruled on again in the second
cause, the one being appealed. See Tex. R. App. P. 52(a). 
      The court took judicial notice of all matters, motions and hearings under the original cause
number and allowed those records to be included in Cause No. 92-5-C, the cause in which Smith
now challenges his murder conviction. See Tex. R. Crim. Evid. 201; Turner v. State, 733
S.W.2d 218, 222 (Tex. Crim. App. 1987) (holding that the trial court may take judicial notice of
its own records in a proceeding involving the same party). Rule 201 does not change this
established practice. Id. Judicial notice takes the place of and is legally equivalent to evidentiary
proof. Legg v. State, 594 S.W.2d 429, 432 (Tex. Crim. App. [Panel Op.] 1980). Its purpose is
to save time in the proof of facts not in controversy. James v. State, 546 S.W.2d 306, 310 (Tex.
Crim. App. 1977).
      When the court took judicial notice of the proceedings in the prior cause involving Smith, it
thereby dispensed with the necessity of reoffering the evidence introduced in the hearing on the
motion to suppress in the first cause and ruling on the motion. See Legg, 594 S.W.2d at 432. 
Therefore, Smith did not waive any complaint relating to the denial of the motion by not
presenting the motion to suppress in the second cause and obtaining an adverse ruling on it.
       Smith consented in writing to waive the appearance of witnesses, the introduction of live
testimony, and judicially confessed to the murder as a part of the negotiated plea. A judicial
confession and signed stipulation and consent to testimony and evidence, however, does not waive
appellate review of the denial of a motion to suppress. Morgan v. State, 688 S.W.2d 504, 507
(Tex. Crim. App. 1985). Nor does pleading guilty to a lesser-included offense prevent appellate
review of pretrial motions heard before the charge is reduced. McKenna v. State, 780 S.W.2d
797, 799 (Tex. Crim. App. 1989). Accordingly, we reject the State's contention of waiver.
SMITH'S POSITION
      Some evidence exists to indicate that, at the time Smith made the oral statements, Detective
Grissom may not have had personal knowledge of the contents of the autopsy report describing
injuries to the victim's anus. Nevertheless, Smith argues that such knowledge must be imputed
to him. He contends that this court must consider the collective knowledge of all law enforcement
personnel, that the medical examiner's office is the agent of law enforcement, and that whatever
the medical examiner knew should be imputed to Grissom. Thus, Smith contends that his oral
statements were not admissible under article 38.22 because police never discovered evidence,
previously unknown to them, verifying the truth of his assertions.
                                                  STATE'S POSITION 
      The State contends that the origin and significance of the injuries to the anal area, as reflected
in the autopsy report, were unknown to police when Detective Grissom questioned Smith. Thus,
according to the State, law enforcement officials were able to identify the origin of the anal
contusions and confirm them as having resulted from the admitted acts of Smith, thus verifying
the facts or circumstances contained in Smith's statements that conduced to establish his guilt. See
Chase v. State, 508 S.W.2d 605, 607-09 (Tex. Crim. App. 1974), overruled on other grounds,
Ex parte Trahan, 591 S.W.2d 837, 841 (Tex. Crim. App. 1979) (police already had plywood
found at the murder scene in their possession when defendant orally admitted that it came from
his brother's room at home). The State argues, therefore, that Smith's statements were admissible
because they "contained assertions of fact" establishing the origin of the injuries "that are found
to be true," as borne out by the contusions to the anal area reported in the autopsy results. See
Tex. Code Crim. Proc. Ann. art. 38.22, § 3(c).
 DISPOSITION
      What Smith orally asserted was that he either had or attempted to have anal intercourse with
the murder victim. Did he orally assert facts, previously unknown to police, which were later
found to be true, and, if so, did the asserted facts show he is guilty of the offense charged? These
are the pivotal questions. See Almanza, 839 S.W.2d at 821. 
      Were the asserted facts previously unknown to police? They already had in their possession
the autopsy results showing injuries to the victim's anal area. Police can possess evidence and yet
still be unaware of its origin or significance. Chase, 508 S.W.2d at 609. That police already
knew of the anal injuries did not mean that the origin and cause of the injuries were already
conclusively known. See id. We hold that the evidence is sufficient to support the finding that
Smith asserted facts previously unknown to police—that he sexually assaulted the murder victim.
      Certainly, if the facts orally asserted were later found to be true, they would show Smith's
guilt of the offense charged. 
      The remaining dispositive question, therefore, is whether the asserted facts—i.e., Smith's
completed or attempted anal intercourse—were later found to be true. See Romero, 800 S.W.2d
at 544-45. Asked another way, subsequent to the oral statements, did police discover evidence
previously unknown to them that independently verified the truth of the asserted facts? See
Almanza, 839 S.W.2d at 821. This is where the facts fall short of the test in Almanza.
      Police knew of the injuries to the victim's anal area when Smith gave his oral confession. 
What was unknown to them was the cause or origin of those injuries, which Smith's oral
statements established. After the statements were made, however, police never discovered
evidence, previously unknown to them, that independently verified Smith's assertion that he had
anal intercourse or attempted anal intercourse with the murder victim. Compare, Chase, 508
S.W.2d at 609 (police subsequently verified by independent evidence, previously unknown to
them, that the plywood in their possession was indeed from the bedroom wall of defendant's
brother).
      We reject the State's contention that the autopsy results were unknown to police at the time
Smith made his oral statements because Detective Grissom was not then personally aware of the
findings in the autopsy report. To hold otherwise would allow police, by intentionally withholding
from the questioning officer knowledge of evidence already in their possession, to elude the
requirement that an oral confession must be independently verified by evidence discovered
subsequently to the statement. Romero, 800 S.W.2d at 544-45.
      Applying the stringent criteria for determining the reliability of an oral statement under
section 3(c), there is no evidence to support the finding that Smith's oral statements led to the
discovery of previously unknown evidence independently verifying the truth of his oral assertion. 
See Tex. Code Crim. Proc. Ann. art. 38.22, § 3(c). Without verification by independent
evidence subsequently discovered, Smith's assertion was nothing more than an oral confession of
guilt, which is inadmissible under the exception in section 3(c). See Almanza, 839 S.W.2d at 821. 
Thus, the court erred when it denied the motion to suppress the oral statements because they were
not admissible under the exception in section 3(c). Accordingly, we sustain points one and two.
      We remand for a new trial, however, because the evidence—both properly and improperly
admitted—is sufficient to support Smith's conviction. See Riley v. State, 825 S.W.2d 699, 701
(Tex. Crim. App. 1992) (holding that the proper appellate remedy is to remand if properly and
improperly admitted evidence is sufficient to support conviction). The judgment is therefore
reversed and the cause is remanded for a new trial.
   
                                                                                     BOB L. THOMAS
                                                                                     Chief Justice

Before Chief Justice Thomas,
      Justice Cummings, and
      Justice Vance
Reversed and remanded
Opinion delivered and filed June 2, 1993
Do not publish