NO. 07-11-00001-CR

 

IN THE COURT OF APPEALS

 

FOR THE
SEVENTH DISTRICT OF TEXAS

 

AT
AMARILLO

 

PANEL D

 



JULY
13, 2011

 



 

THE STATE OF TEXAS, APPELLANT

 

v.

 

OCTAVIO ORTIZ, APPELLEE 



 



 

 FROM THE 140TH DISTRICT COURT OF
LUBBOCK COUNTY;

 

NO. 2009-423,824; HONORABLE JIM BOB DARNELL, JUDGE



 



 

Before QUINN,
C.J., and CAMPBELL and PIRTLE, JJ.

 

 

OPINION

 

            In
this interlocutory appeal,[1]
the State of Texas challenges the trial court’s order suppressing two oral
statements of appellee Octavio
Ortiz.  We will affirm the order of the
trial court.

Background

            The
trial court’s order was signed after a hearing on the motion to suppress, at
which Lubbock County Sheriff’s Deputy, Corporal Jason Johnson, was the only
witness.  At the State’s request, the
trial court issued findings of fact and conclusions of law.  The court’s findings include the facts that
on May 20, 2009, on U.S. Highway 87 south of Lubbock, Corporal Johnson stopped
a 2009 Dodge Avenger driven by appellee Ortiz, for
speeding.  A camera in Johnson’s vehicle
recorded the stop and the video-audio recording was admitted in evidence and
played for the court at the suppression hearing.  

The court’s findings also include the
facts that as Ortiz brought the Dodge to a stop, he
leaned over the passenger seat, which his wife occupied.  The vehicle bore license plates from
Chihuahua, Mexico.  Ortiz and his wife
spoke Spanish to Johnson, although evidence showed, and the trial court found,
they understood English.  At times during
the stop, Johnson spoke to them in Spanish. 


Ortiz told Johnson he lived in Odessa
and he and his wife were traveling to Spearman, Texas.  However, at other times during the stop he
and his wife indicated their destination was Gruver, Texas.  Ortiz also told Johnson he was previously
arrested for cocaine possession and was on probation in Spearman.

Johnson then spoke with Ortiz’s
wife.  To him, she appeared nervous,
breathing rapidly.  She told Johnson she
had about $1,000 with her and she “guessed” Ortiz had a similar amount.  As they spoke Johnson detected a “faint” odor
of raw marijuana coming from the vehicle’s
interior.  He requested a background
check and called for a backup officer. 
Moments later he called for a female officer as well.  

At Johnson’s request, Ortiz gave
permission to search the vehicle and his person.  Meanwhile the requested backup officers
arrived at the location of the stop.  The
female officer had Ortiz’s wife step from the vehicle and began patting her
down.  When Ortiz’s wife made movements
to avoid the pat-down, the male and female officers placed her against the car
and the female officer continued the pat-down search.  The female officer felt an object attached to
the woman’s right thigh.  She was
handcuffed and, according to a finding of the trial court, arrested.  At that point, Johnson, who was standing with
Ortiz, told him to place his hands behind his back to be handcuffed.  Ortiz was not given Miranda warnings.[2]  Johnson testified that he placed Ortiz in
handcuffs for safety while officers determined what was strapped to his wife’s
leg.  In Johnson’s opinion, Ortiz was not
then under arrest.

When the backup officer told Johnson
that the female officer had found “something” under Ortiz’s wife’s skirt,
Johnson asked Ortiz what kind of drugs his wife had.  Ortiz responded “coca” and “cocaina,” which the trial court found meant cocaine.  At Johnson’s instruction, the female officer
brought Ortiz’s wife to Johnson’s vehicle, directly in front of the camera, for
removal of the suspected cocaine.  As
they approached the vehicle Johnson was off camera.  He asked how much (“cuantos?”)
cocaine Ortiz’s wife had.  She responded
“un kilo,” which the trial court found meant one kilogram of cocaine.  Ortiz also responded to Johnson’s question
that his wife had one kilo of cocaine. 
The female officer removed a package of suspected cocaine duct-taped to
Ortiz’s wife’s leg.  

            Ortiz
was subsequently indicted for possession of 400 grams or more of cocaine with
intent to deliver.[3]  He filed a motion to suppress evidence and
his statements made during the stop. 
After the hearing, the trial court granted the motion in part, ordering
suppression of Ortiz’s two statements, his “coca” or “cocaina”
statement identifying the substance as cocaine, and his “un kilo” statement
identifying its amount.  The State now
appeals.

Analysis

Standard of Review

In reviewing a suppression ruling, we
afford almost total deference to the trial court’s findings of fact, but review
de novo its application of law to
those facts.  Maxwell v. State, 73 S.W.3d 278, 281 (Tex.Crim.App. 2002).[4]  

First Issue

            By
its first issue, the State asserts the suppressed statements were admissible
even though Ortiz had not received Miranda
warnings before making them because, the State argues, he was then either not
in custody or not being interrogated, and even if he were being subjected to
custodial interrogation, the statements were admissible as “assertions of
fact.”[5]  We will address each of the arguments in
turn.

Was Ortiz in custody on his first statement?

The Standard

The requirements of warning and
waiver of rights set forth in Miranda
serve to protect the Fifth Amendment right against compelled
self-incrimination.  Dickerson v. United States, 530 U.S.
428, 440 n.4, 120 S.Ct. 2326, 2334 n.4, 147 L.Ed.2d
405 (2000).  The requirement that
police advise a person of rights prior to interrogation applies if the person
is “in custody or otherwise deprived of his freedom of action in any
significant way.”  Miranda, 384 U.S. at 445; 86 S.Ct. at 1612; Stansbury v. California,
511 U.S. 318, 322, 114 S.Ct. 1526, 1528, 128 L.Ed.2d
293 (1994).  To determine whether Miranda applies in a particular
circumstance, courts apply an objective test to resolve the “ultimate
inquiry:  was there a formal arrest or
restraint on freedom of movement of the degree associated with formal
arrest.”  J. D. B. v. North Carolina, No. 09-11121, 2011 U.S. Lexis 4557, at
*17 (June 16, 2011) (quoting Thompson v. Keohane, 516 U.S. 99, 112, 116 S.Ct.
457, 133 L.Ed.2d 383 (1995)).  The
objective circumstances are viewed through the eyes of a reasonable person,
thus “[a] person is in ‘custody’ only if, under the circumstances, a reasonable
person would believe that his freedom of movement was restrained to the degree
associated with a formal arrest.”  Dowthitt v. State, 931 S.W.2d 244, 254 (Tex.Crim.App. 1996) (citing Stansbury, 511 U.S. 318, 128 L.Ed.2d at 298-99, 114 S.Ct.
1526); accord Herrera v. State, 241 S.W.3d 520, 525 (Tex.Crim.App.
2007).  

The Supreme Court long ago held that
persons temporarily detained pursuant to ordinary traffic stops are not “in
custody” for Miranda purposes.  Berkemer v. McCarty, 468 U.S. 420, 440, 104 S.Ct.
3138, 3150, 82 L.Ed.2d 317 (1984). 
At the same time, the Court made clear that a motorist who has been
detained pursuant to a traffic stop but whose freedom of action thereafter is
curtailed to the degree associated with a formal arrest is entitled to the
protections prescribed by Miranda.  Id.  Unless conveyed to the suspect, the
subjective intention of the officer is not relevant to the question of custody;
“the only relevant inquiry is how a reasonable man in the suspect’s position
would have understood his situation.”  Berkemer, 468 U.S. at 442, 104 S.Ct. at 3151.

One of the factors that led the Court
to treat the detention that accompanies an ordinary traffic stop like a Terry stop[6]
rather than as custodial under Miranda
is such a detention of a motorist is “presumptively temporary and brief.”  Berkemer, 468 U.S.
at 437, 104 S.Ct. at 3149.  Summarizing the analysis under Miranda applicable to a traffic or
investigatory stop that becomes extended or involves police procedures not
ordinarily associated with such a temporary detention, Professors Dix and Schmolesky have concluded, “The ultimate question is
whether, given all the circumstances, a reasonable person would perceive the
detention likely to be long term.” 
George E. Dix and John M. Schmolesky, 41 Texas
Practice: Criminal Practice and Procedure § 16.25 (3d ed. 2011) (citing Berkemer, 468 U.S. at 442, 104 S.Ct. at 3152).

Application

The trial court concluded that Ortiz
was in custody for Miranda purposes
when he was handcuffed.  The State agrees
Ortiz was in custody by the time he made the second (“un kilo”) of the
suppressed statements,[7]
but argues he was not in custody when he made the first statement (“cocaina”).  For the
reasons that follow, we see no error in the trial court’s conclusion.

We begin by noting that, according to
unchallenged findings of fact, the events during which Ortiz made the
suppressed statements occurred relatively quickly.  The sequence of events from Ortiz’s wife
being placed under arrest by the female deputy when she felt the object on her
leg, and Ortiz’s “un kilo” statement, the second statement, all occurred in a
minute and twenty seconds.  The two
suppressed statements themselves were made only thirty seconds apart.  The State’s analysis thus draws a fine line
during relatively fast-moving events, as according to the State a person in
Ortiz’s circumstances reasonably could have perceived himself as in custody
when Johnson asked him the second question but not when he asked the first
question thirty seconds before. 

The “reasonable person” standard we
apply presupposes an innocent
person.  Dowthitt, 931 S.W.2d at 254
(citing Florida v. Bostick,
501 U.S. 429, 438, 115 L.Ed.2d. 389, 111 S.Ct. 2382
(1991) (emphasis in original)).  But,
because the evaluation whether a person is in custody for Miranda purposes includes all the objective circumstances, Stansbury,
511 U.S. at 323, 114 S.Ct. at 1529, it does not
presuppose a person oblivious to his situation. 
The objective circumstances here include those that Ortiz was stopped
going 83 miles an hour where the speed limit was 70,
and early in the stop made Johnson aware that he had a previous arrest for
cocaine and was on probation in another county. 


Shortly after Ortiz was removed from
his car, and immediately after Johnson’s first conversation with Ortiz’s wife,
Johnson confronted Ortiz with an accusation they were carrying drugs.  He asked Ortiz “how much” drugs were in the
car.  In response, the court found, Ortiz
“backed away and said, ‘No.’” 
After that exchange, Johnson further questioned Ortiz about his
destination and his purpose for traveling there, then called for the backup
officer and then a female officer. Johnson then asked Ortiz for consent to
search his person and the vehicle. 
Shortly after the backup and female officers had arrived, the female
officer began the pat-down of Ortiz’s wife, “felt an object” on her right
thigh, and arrested her.  Those officers
then “called out” something to Johnson, who then handcuffed Ortiz.  Johnson gave Ortiz no reason for placing him
in handcuffs.[8]  The backup officer walked back over to Ortiz
and Johnson, telling him the female officer had found “something” under Ortiz’s
wife’s skirt.  

Johnson testified he handcuffed Ortiz
for officer safety.  The trial court’s
findings include the fact Johnson placed Ortiz in handcuffs while his wife was
resisting the pat-down.  In arguing that
Ortiz then was detained but not arrested, the State’s brief contains the
statement, “Whether a seizure is an actual arrest or an investigative detention
depends on the reasonableness of the intrusion under all the facts.”  While accurate as a proposition of Fourth
Amendment law, for purposes of our present inquiry the statement misses the
mark.  As we have noted, the requirements
of Miranda arise from Fifth Amendment
protections.  Dickerson, 530 U.S. at 440 n.4, 120 S.Ct. at 2334 n.4. 
Hence the determination whether handcuffing Ortiz placed him in custody
for Miranda purposes does not turn on
the reasonableness, under the Fourth Amendment, of Johnson’s decision to
handcuff him for officer safety.  The two
inquiries are related but they are not the same.  See
United States v. Newton, 369 F.3d 659, 675 (2d Cir. 2004) (concern under Miranda “is not with the facts known to
the law enforcement officers or the objective reasonableness of their actions
in light of those facts.  Miranda’s focus is on the facts known to
the seized suspect and whether a reasonable person would have understood that
his situation was comparable to a formal arrest”); Dowthitt, 931 S.W.2d at 254
(person is in custody if, under circumstances, reasonable person would believe
he is restrained to degree associated with formal arrest).  See
also United States v. Revels, 510
F.3d 1269, 1274 (10th Cir. 2007) (similarly distinguishing between Fourth
Amendment analysis focusing on reasonableness of police actions and Miranda custody analysis). 

A conclusion Ortiz was in custody
under Miranda when he was handcuffed
means neither that he actually was under arrest nor that Johnson’s stated concerns
for officer safety were unreasonable, under a Fourth Amendment analysis.[9]  See
Newton, 369 F.3d at 677 (finding handcuffing suspect was reasonable to
investigatory purpose under Fourth Amendment but placed him in custody under Miranda); United States v. Martinez, 462 F.3d 903, 908-09 (8th Cir. 2006)
(noting whether handcuffing placed defendant in custody is “separate question”
from whether handcuffing constituted arrest and finding defendant in custody
during questioning although still only detained for Fourth Amendment purposes);
People v. Holt, 233 P.3d 1194, 1198
n.3 (Colo. 2010) (“In determining that the officers used a degree of force
traditionally associated with custody and arrest, we do not conclude or imply
that the officers acted unreasonably. 
Entering the apartment with weapons drawn and handcuffing [the suspect]
may have been reasonable or even necessary for officer-safety purposes, but
that does not alter our custody inquiry, which focuses on how the officers’
actions would have reasonably affected the suspect’s perception of his own
freedom”).  

By the time Ortiz was placed in
handcuffs, in light of the surrounding circumstances, a reasonable person would
have understood that his detention was no longer likely to be “temporary and
brief,” but “long term.”  Berkemer, 468 U.S. at 437, 104 S.Ct. at 3149; Dix
and Schmolesky, § 16.25, at 44.  Under the circumstances reflected in its
findings, we agree with the trial court that, by that time a reasonable person
in Ortiz’s situation would believe that his freedom of movement was restrained
to the degree associated with a formal arrest. 
See Herrera, 241 S.W.3d at 525.  He
was in custody for the purpose of the Miranda
warnings.

            Were
the two statements the product of interrogation?

The State further contends even if in
custody Ortiz was not being interrogated when he made the two statements
because the question prompting the first statement was “a general or routine
question” and the question prompting the second statement was posed to Ortiz’s
wife and not Ortiz.

            Once
Ortiz was in custody, interrogation could not occur until he was provided his Miranda rights.  Miranda,
384 U.S. at 444, 86 S.Ct. at 1612.  “Interrogation,” under Miranda, refers to express questioning as well as words or actions
by the police, other than those normally attendant to arrest and custody, that
police “should know are reasonably likely to elicit an incriminating
response.”  Rhode Island v. Innis,
446 U.S. 291, 301, 100 S.Ct. 1682, 1689, 64 L.Ed.2d
297 (1980).  The term
“incriminating response” refers to any response that the prosecution may seek
to introduce at trial.  Innis, 446 U.S. at 302 n.5;
100 S.Ct. at 1689 n.5.  See, e.g., Ramirez v. State, 105 S.W.3d 730, 741 (Tex.App.--Austin 2003, no pet.) (officer
found contraband during search of suspect’s garage and asked suspect “Is there
anything else I’m going to find in there that’s illegal, any more marihuana?”;
question was interrogation).

            Concerning
the first statement, at the suppression hearing Johnson testified that he asked
Ortiz, “What kind of drugs does [Ortiz’s wife] have [?]”  Not all post-arrest questioning constitutes
an interrogation.  Jones v. State, 795 S.W.2d 171, 174 (Tex.Crim.App. 1990). 
For example, routine inquiries, questions incident to booking, broad
general questions such as “what happened?” on arrival at the scene of a crime,
and questions mandated by public safety concerns are not interrogation.  Id.
at 174 n.3.  We
conclude Johnson’s question does not fall within the category of general or
routine questions incident to an arrest. 
Rather, it specifically addressed the officers’ discovery of the item
strapped to the leg of Ortiz’s wife as she was searched in the presence of
Ortiz and Johnson.  Johnson’s question to
Ortiz asking the “kind of drugs” his wife had was
practically certain to elicit an incriminating response.  Cf. Camacho v. State, No. 08-05-0089-CR, 2006 Tex. App. Lexis 5338,
at *12 (Tex.App.--El Paso June 22, 2006, no pet.)
(not designated for publication) (when
officers found narcotics in vehicle driven by suspect, subsequent inquiry
asking suspect “if he had any other narcotics on his person” was interrogation
within the meaning of Miranda). 

            As
for the second statement, the State argues it was not the result of
interrogation of Ortiz because Johnson’s question “cuantos?”
(“how much?”) was not
addressed to Ortiz but to his wife.  The
argument depends on resolution of that fact issue:  to whom Johnson’s question was directed.  The trial court addressed the issue in its
findings of fact and conclusions of law. 
The court’s conclusions of law contain a conclusion stating, “[Ortiz’s]
statement that the amount of cocaine found on [his wife’s] person was a
quantity of one kilo was made in response to a question by Deputy Johnson to
him.”

The designation placed on a finding
of fact or conclusion of law by a trial court is not controlling on a reviewing
court.  State v. May, 242 S.W.3d 61, 64 n.1 (Tex.App.--San
Antonio 2007, no pet.); Ray v. Farmers’
State Bank, 576 S.W.2d 607, 608 n.1 (Tex. 1979).  The trial court’s conclusion of law that
Ortiz made the “un kilo” statement in response to a question to him is nothing
more than a finding of historical fact. 
As a finding of fact, if supported by the record, it is entitled to
almost total deference on appeal.  Ross v. State, 32 S.W.3d
853, 856 (Tex.Crim.App. 2000). 

The State argues, however, that the
court’s statement, whether finding or conclusion, is not supported by the
record.  The video does not resolve the
issue; Johnson and Ortiz are outside the camera’s view during the question and
response.  To the State, Johnson’s
testimony at the suppression hearing makes clear that he directed his question
to Ortiz’s wife.  We do not agree that
his testimony gives a clear answer.  In
fact, as recorded by the court reporter, Johnson’s testimony regarding his “cuantos” question makes little sense.[10]  Based on the record before us, we will defer
to the trial court’s express finding that Ortiz’s “un kilo” statement was in
response to a question directed to him.[11]

Like the question precipitating
Ortiz’s first statement, the question of the quantity of the cocaine was not a
general question but one certain to elicit an incriminating response.  We agree with the trial court that Ortiz was
subject to interrogation, for purposes of Miranda,
when he made the two statements.  

            Were the two statements nevertheless
admissible under article 38.22 § 3(c)?

The State further argues, however,
that even were we to find Ortiz was in custody when he made the two statements,
the requirements of Article 38.22 § 3(a)[12]
did not attach because the statements are admissible as “assertions of
fact.”  Tex. Code Crim.
Proc. Ann. art. 38.22 § 3(c) (West 2005).  Generally, an oral confession is inadmissible
unless made in compliance with article 38.22 § 3(a).  Moore v. State, 999 S.W.2d 385, 400 (Tex.Crim.App.
1999).  However, to this rule §
3(c) provides an exception.  “Subsection
(a) of this section shall not apply to any statement which contains assertions
of facts or circumstances that are found to be true and which conduce to
establish the guilt of the accused, such as the finding of secreted or stolen
property or the instrument with which he states the offense was committed.”  Tex. Code Crim. Proc. Ann.
art. 38.22 § 3(c) (West 2005).  Under this exception, “oral statements
asserting facts or circumstances establishing the guilt of the accused are
admissible if, at the time they were made, they contained assertions unknown by
law enforcement but later corroborated.” 
Woods v. State,
152 S.W.3d 105, 117 (Tex.Crim.App. 2004).  

The State appears to assume that
statements admissible under § 3(c) are exempt from the requirements of Miranda. 
That is, an oral statement obtained during custodial interrogation,
meeting the exception of § 3(c) would be admissible, even if not preceded by
the Miranda warnings.  For the proposition, the State cites no
authority and we can envision none since such a rule would engraft an
additional, unrecognized exception onto Miranda.  See
Dix & Schmolesky, §§ 16.134-16.137 (discussing Miranda exceptions for preserving
“public safety,” “undercover investigations,” and “routine and noninvestigatory questioning”).  We think it fundamental that
statements admissible under § 3(c) are not exempt from the requirements
of Miranda.  See Perillo v. State, 758 S.W.2d 567, 575 (Tex.Crim.App. 1988) (stating “that Miranda warnings must precede a confession offered under Article
38.22, § 3(c)”); Watson v. State, 762
S.W.2d 591, 594 n.3 (Tex.Crim.App. 1988) (noting oral
statements in issue, if admissible, were admissible under article 38.22 § 3(c)
and must have been preceded by Miranda
warnings); Moore v. State, 505 S.W.2d
887 (Tex.Crim.App. 1974); Herron v. State, 485 S.W.2d 558 (Tex.Crim.App.
1972).  See generally Port v. State, 791 S.W.2d 103, 105 (Tex.Crim.App. 1990) (defendant’s oral statement which came
within § 3(c) was preceded by Miranda
warnings which accused said he understood); Almanza v. State, 839 S.W.2d 817, 818 (Tex.Crim.App.
1992) (Miranda warnings preceded
questioning but statement did not come within § 3(c) exception to article
38.22).  Here, it matters not whether the
two statements might come within the exception of article 38.22 § 3(c) because
prior to their utterance Ortiz did not receive the Miranda warnings.

            Like
the trial court, we conclude the two statements were the product of custodial
interrogation occurring prior to receipt of the Miranda warnings.  The
statements were properly suppressed for this reason.  We further conclude this result is not
altered, even assuming the statements were within the exception to article
38.22 § 3(c).  We overrule the State’s
first issue. 

The Second Issue

            In
its second issue, the State asserts that even if Ortiz was in custody and
subject to interrogation at the time he made the two statements, the statements
are nevertheless admissible under the res
gestae exception provided by article 38.22 §
5.  That section provides in part that
nothing in article 38.22 precludes the admission “of a statement that is the
res gestae of the arrest or of the offense.”  See Tex. Code Crim. Proc. Ann. art. 38.22
§ 5 (West 2005).  A statement is res gestae if
“made in response to a startling event, spontaneously or impulsively, without
time for reflection or contrivance, and such a statement can be made in
response to an inquiry.”  Williamson v. State, 771
S.W.2d 601, 606 (Tex.App.--Dallas 1989, pet.
refused).  Statements may be
admissible as res gestae
of the arrest even if they resulted from custodial interrogation.  Etheridge v. State, 903 S.W.2d 1, 15 (Tex.Crim.App.
1994).  The record must show that
“the declarant was excited or emotionally stimulated
or in the grip of a shocking event so as to render the statement a spontaneous
utterance.”  Ward v. State, 657 S.W.2d 133, 136 (Tex.Crim.App.
1983) (citing Scott v. State, 564
S.W.2d 759 (Tex.Crim.App. 1978); Smith v. State, 514 S.W.2d 749 (Tex.Crim.App.
1974); Graham v. State, 486 S.W.2d 92
(Tex.Crim.App. 1972)).  

When determining whether a statement
is admissible as res gestae,
the first concern is whether Miranda
requires its exclusion.  Smith v. State, 507
S.W.2d 779, 781 (Tex.Crim.App. 1974).  As we have already determined, the two
statements were the product of custodial interrogation preceding the Miranda warnings; thus, they are
excluded on constitutional grounds. 
Whether the statements might otherwise amount to res gestae of the arrest or the offense
is irrelevant.  Id.  See also Pilcher v. Estelle, 528 F.2d
623, 624-25 (5th Cir. 1976) (per curiam) (Miranda protections not subordinate to
Texas res gestae
rule).  We overrule the State’s second
issue.

Conclusion

Having overruled the State’s two
issues on appeal, we affirm the order of the trial court suppressing the two
statements of Ortiz.

 

                                                                                                James
T. Campbell

                                                                                                            Justice

Publish.











[1] Tex. Code Crim. Proc. Ann. art.
44.01(a)(5) (West Supp. 2010).





[2] Miranda v. Arizona, 384 U.S. 436, 444,
86 S.Ct. 1602, 1612, 16 L.Ed.2d 694 (1966).





[3] Possession of a controlled substance
listed in Penalty Group I, which includes cocaine, with the intent to deliver
is an offense under § 481.112(a) of the Texas Health and Safety Code.  See
Tex. Health & Safety Code Ann. § 481.112(a) (West 2010) and § 481.102(3)(D) (West 2010) (cocaine is a controlled substance listed
in Penalty Group I).  Under § 481.112(f),
possession of 400 grams or more of cocaine is punishable by imprisonment for
life or for a term of not more than 99 years or less than 15 years, and a fine
not to exceed $250,000.  Tex. Health & Safety Code Ann. § 481.112(f) (West 2010).





[4] The court’s conclusions are summarized by these
concluding statements from its findings of fact and conclusions of law:

 

“The basis of this ruling is that [Ortiz] was ‘in custody’ for Miranda purposes when he responded to
Corporal Johnson’s ‘custodial interrogation’ inquiring about the identity of
the substance attached to [Ortiz’s] passenger’s leg as well as the quantity.
Because no Miranda warnings were
given to [Ortiz] before the questions, and because [Ortiz] did not acknowledge
and waive his rights before answering the question[s], his responsive
statement[s] that the substance was cocaine and the amount was a kilo [are]
inadmissible both under Miranda and
under [art. 38.22.]”





[5] Oral statements and confessions made as a result of
custodial interrogation are generally not admissible unless meeting the
requirements of Code of Criminal Procedure article 38.22 § 3(a).  Tex. Code Crim. Proc. Ann.
art. 38.22 § 3(a) (West 2005); Villarreal
v. State, 61 S.W.3d 673, 680 (Tex.App.--Corpus
Christi 2001, pet. refused). Article 38.22 § 3(c) excludes from the
requirements of art. 38.22 § 3(a) a statement containing “assertions of facts
and circumstances that are found to be true and which conduce to establish the
guilt of the accused . . . .”  





[6] Terry
v. Ohio, 392 U.S. 1, 88 S.Ct. 1868, 20 L.Ed.2d
889 (1968).

 





[7] The State acknowledges that Ortiz was in custody when
he responded “un kilo” to Johnson’s second question asking how much cocaine his
wife had because probable cause to arrest him was apparent by that time.  See Dowthitt, 931 S.W.2d at 255 (suspect may be in custody
when there is probable cause to arrest and officer does not tell suspect he is
free to leave).  The cocaine had been
detached from his wife’s leg and placed on the hood of Johnson’s vehicle, and Ortiz
had pronounced it “cocaina,” in response to Johnson’s
first question.





[8] See State v. Sheppard, 271 S.W.3d 281,
289-91 (Tex.Crim.App. 2008) (in Fourth Amendment
analysis, noting import of facts that officer told suspect he was handcuffing
him only until scene could be secured and he was not under arrest). 





[9] Such a conclusion is thus
also fully consistent with the holding of the Court of Criminal Appeals in Sheppard, 271 S.W.3d at 289, that “the
use of handcuffs does not automatically convert a temporary detention into a
Fourth Amendment arrest.”





[10] The colloquy between the prosecutor and Johnson that
the State finds conclusive on the issue reads as follows: 

 

Q.  Okay. 
And at that point then you say, ‘Cuantos’? And
does [Ortiz?] then--and what does ‘Cuantos’ mean?

A.  How much.

Q.  Okay. 
And does he respond when you ask him, ‘Cuantos’?

A.  I was asking her how much.  And at the same time I answered him--or at
the same time I answered, ‘Is that you said,’ because her response was, ‘Un kilo.’  And he told
me the same thing.





[11] The State also points to the trial court’s findings
that Johnson was credible and his testimony true.  We see no inconsistency between the two
findings.  On this record, the court
readily could have found both that Johnson was credible and that his “cuantos” question was directed to Ortiz.  The trial court was the sole judge of the
weight to be given the testimony.  Ross, 32 S.W.3d at 855.  

 





[12] Article 38.22 § 3(a) inter alia requires that the accused receive the warnings of
article 38.22 § 2(a).  Section 2(a)
includes the Miranda warnings as well
as the right to terminate the interview at any time.  Tex. Code Crim. Proc. Ann.
art. 38.22 § 2(a)(1)-(5) (West 2005); Penry v. State, 903 S.W.2d 715, 747 (Tex.Crim.App. 1995).